THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF CUMBERLAND

*v.*

CAROLINE BUCK et al.

[Submitted January 23d, 1912.   Determined January 26th, 1912.]

1. A deed to the board of chosen freeholders of a county recited that the grantors "do give, grant, bargain, sell and convey unto the board * * * and to their successors, to and for the use and purpose of building and erecting thereon public offices for the clerk and surrogate of the county * * * to have and to hold the said lot of land, and the right to use the alley aforesaid, unto the board, * * * and their successors,

and to their only proper use, \* \* \* so long as the same shall be used for the purposes hereinbefore mentioned and no longer," and the covenant for quiet enjoyment warranted peaceable possession, "so long as the same shall be used for the purposes aforesaid."—*Held,* that the deed gave the board a determinable fee, terminable upon ceasing to use the lot for a building for county purposes.

2. A determinable estate may be dependent upon a condition or may arise upon a limitation; in case of a condition, the happening of the event, upon which the estate may be defeated, not *ipso facto* defeating it without some act by the grantor, such as entry, while in the case of a conditional limitation the estate terminates at once upon the happening of the event, and reverts to the grantor, or the person to whom it is limited over.

3. The operative words in case of a conditional limitation are words of time, such as "while," "so long as;" while in case of conditons or covenants they are words of condition, such as "on condition that," "provided," &c.

4. Words in a deed which limit the continuance of the estate and mark the time at which it terminates are words of limitation; but, if they make the estate liable to be defeated in case the event expressed should arise before the termination of the estate, they are words of condition, and pass a conditional estate.

5. Under act February 13th, 1798 (*Rev. 1877 p. 127 § 2*), providing that the county boards of chosen freeholders may acquire, purchase, have, and hold any lands, &c., in trust for the use of their said counties, and such other uses as may be designated by law, a county board would have power to purchase a lot for county buildings, to be held by the county only so long as it was used as a site for buildings used by the county, if the board deem that the best interests of the county demanded that it purchase such estate.

6. A deed described the land conveyed by metes and bounds, which included a lot theretofore conveyed to the county, but after such description it provided, "containing (after excepting out what was heretofore sold to the county) twenty-four square rods of land, be the same more or less," and the *habendum* clause was, "to have and to hold, \* \* \* except that part before mentioned sold to the county."—*Held,* that the deed clearly did not convey the lot theretofore conveyed by the grantor to the county.

7. A description by metes and bounds in a deed covered a lot theretofore conveyed to the county, but provided after the description, "excepting thereout and therefrom a certain lot theretofore sold and conveyed \* \* \* to the board of chosen freeholders of the county," referring to the place of record, "after which said exception there is supposed to contain about twenty perches of land."—*Held,* that the deed excepted grantor's reversionary right in the lot theretofore conveyed to the county.

On bill, &c., to quiet title.

The bill is a statutory bill to quiet title to real estate, and is filed by the board of chosen freeholders of the county of Cumberland to quiet title to certain land in the city of Bridgeton, now in the possession of that board, on which land the old clerk's and surrogate's offices of that county stand.

Defendants, as heirs-at-law of John Buck, deceased, make claim that the recent removal of the county records from the buildings on the lot in question to the new county buildings has been operative to defeat the title of the county and vest an absolute title, as to the undivided one-half thereof, in them.

The lot in controversy was conveyed to the board of chosen freeholders of the county of Cumberland by John Buck and Daniel P. Stratton, who were equal owners as tenants in common, by deed of conveyance dated September 1st, 1815. The deed expresses a consideration of $5 as paid to the grantors.

The words of grant are—

"Do give, grant, bargain, sell and convey unto the board of chosen freeholders of the county of Cumberland aforesaid, and to their successors, to and for the use and purpose of building and erecting thereon public offices for the clerk and surrogate of the county of Cumberland, that lot," &c.

The words of the *habendum* clause are—

"To have and to hold the said lot of land, and the right to use the alley aforesaid, unto the board of chosen freeholders of the county of Cumberland aforesaid, and their successors, and to their only proper use, benefit and behoof, so long as the same shall be used for the purposes hereinbefore mentioned and no longer."

The covenant of quiet enjoyment is as follows: "And that in the quiet and peaceful possession of the same so long as the same shall be used for the purposes aforesaid," the grantors will warrant and defend.

In the year 1815 the clerk's and surrogate's offices were erected by the county on the lot and have been used as such, continuously, until recently. The use of the property for the purpose named has now been permanently abandoned.

The rights of the heirs-at-law of Daniel P. Stratton, the other grantor, have been conveyed to complainant.

Final hearing has been had on a written stipulation of facts.

*Mr. Roscoe C. Ward* and *Mr. Walter H. Bacon,* for the complainant.

*Messrs. Hampton & Fithian,* for the answering defendants.

LEAMING, V. C.

It is contended in behalf of the county that the language of the deed in question which relates to the use of the premises conveyed must be construed as a mere covenant; but I think it is entirely clear that the deed vests in the grantees a determinable fee. *State* v. *Brown, 27 N. J. Law (3 Dutcher) 13, 20; 4 Kent Com. 10.* A determinable estate may arise from and be dependent upon a condition, or it may be an essentially different estate arising from a limitation, the latter estate being sometimes called a conditional limitation. These two well-recognized determinable estates differ materially in their formation and quality, and their essential difference is material in the consideration of the deed in question. In a conditional estate the happening of the event upon which the estate may be defeated does not, in itself, operate to defeat the estate; some act must yet be done (such as, at common law, making an entry) to defeat the estate: the grantor may never elect to defeat the estate; in such an estate there is no reverter arising wholly from the happening of the event upon which the estate may be defeated. In a limitation the estate determines, *ipso facto,* upon the happening of the event which marks its boundary as to time, and the estate thereupon goes over at once to the grantor by reverter, or to the person to whom it is limited upon the happening of such contingency, if it be limited over. The ordinary technical words by which a limitation is expressed relate to time, the technical words given in *2 Bac. Abr., tit. "Conditions" (H), 117,* being *"dum, dummodo, quandiu, donec, quosque, ubicunque, usque ad, tamdiu;"* the words by which conditions are created are *"sub conditione, ita quod, si contingat, proviso."* The general rule in determining whether words are of condition or of limitation is stated by Washburn in his work on *Real Property,* as follows:

"Where they circumscribe the continuance of the estate, and mark the period which is to determine it, they are words of limitation; when they render the estate liable to be defeated, in case the event expressed should arise before the determination of the estate, they are words of condition."

The distinction between the two classes of determinable estates here under discussion is elaborately considered in *1 Washb. Real Prop. *457 to *461.* This distinction between a condition and a limitation is stated in *2 Blacks. Com. 155,* as follows:

"A distinction is, however, made between a condition in deed and a limitation, which Littleton denominates also a condition in law. For when an estate is so expressly confined and limited by the words of its creation, that it cannot endure for any longer time than till the contingency happens upon which the estate is to fail, this is denominated a limitation; as when land is granted to a man so long as he is parson of Dale, or while he continue unmarried, or until out of the rents and profits he shall have made 500£ and the like. In such case the estate determines as soon as the contingency happens (when he ceases to be a parson, marries a wife, or has received the 500£), and the next subsequent estate, which depends upon such determination, becomes immediately vested, without any act to be done by him who is next in expectancy. But when an estate is, strictly speaking, upon condition in deed (as if granted expressly upon condition to be void upon the payment of 40£ by the grantor, or so that the grantee continues unmarried, or provided he goes to York, &c.), the law permits it to endure beyond the time when such contingency happens, unless the grantor or his heirs or assigns take advantage of the breach of the condition and make either an entry or a claim in order to avoid the estate."

See, also, *4 Kent Com. *126.* It will thus be observed that while it may at times become difficult to determine whether a given provision in a deed or devise is to be recognized as a condition or a mere covenant or trust, the essential qualities and characteristics of a limitation are too clearly defined to be easily confused. The words "provided" or "on condition," though appropriate to the creation of a condition, may also be appropriately used to introduce a covenant or trust (*MacKenzie* v. *Trustees of Presbytery of Jersey City, 67 N. J. Eq. (1 Robb.) 652; Mills* v. *Davison, 54 N. J. Eq. (9 Dick.) 659*); but the words "so long as," followed by the words "and no longer," can have but one significance in the absence of some element clearly disclosing that they were not designed to defeat the estate granted at the expiration of the period of time named.

The provisions of the deed here in question so clearly and adequately create a limitation that no field for construction appears to exist. The *habendum* of the deed, which is wholly consistent with all its other parts, and therefore determines what estate is granted, is: "To have and to hold  *  *  *  so long as the same shall be used for the purposes hereinbefore mentioned and no longer." The period named marks the limitation of the estate as to time; at the end of that period the determinable estate ceases and the fee vests in the grantor, or his heirs, by reverter. The words "so long as the same shall be used for the purposes hereinbefore mentioned" are sufficient for the creation of a limitation, the added words "and no longer" remove all possibility of doubt touching the quality of the estate granted. It is clearly impossible to regard this language as not having been intended to defeat the estate granted or as in the nature of a covenant or trust.

It is also urged in behalf of the county that the board of chosen freeholders of that county had no power to accept a deed containing a limitation of the nature of the one here in question, and ·that the limitation must therefore be declared void. The statute to which my attention is directed defining the powers of the board of chosen freeholders is section 2 of the act of February 13th, 1798. *Rev. p. 317.* It is there provided:

"That the said boards of chosen freeholders, in and for their respective counties, and their successors, shall be able and capable to acquire, purchase, receive, have and hold any lands, tenements, hereditaments, goods and chattels in trust to and for the use of their said counties, respectively, and for such other uses as are or may be designated by law."

I am impressed that the power to "acquire, purchase, receive, have and hold" real estate for the use of the county includes the power to acquire any tenure which the best interests of the county may demand. It may be conceded that a contract upon the part of the board of freeholders wherein they agreed not to remove the location of county buildings would be contrary to public policy and void; but the deed in question has not, at any time, been operative to deny to the board or its successors the right or privilege to locate county buildings where the best interests of the

county might demand. The stipulated facts disclose that the lot in question was conveyed to the board for almost a nominal price and that a considerable sum of money was at the same time contributed to the county to defray the cost of the buildings; it is impossible to say now that the benefits flowing to the county through the acquisition of the determinable fee in question were not greater than could have been secured by the purchase of an absolute estate. The situation here presented is not analogous to an attempt to enforce a contract of a county wherein the county has agreed not to remove its public buildings, or to enforce a covenant against the free exercise of 'municipal functions.

It is also urged that as John Buck, one of the grantors in the deed in question, was a member of the board of freeholders at the date of the conveyance in question and sought by the limitation contained in the conveyance to benefit other property then owned by him in the vicinity, his heirs must now be denied the benefits of the limitation. The stipulation of facts does not state that John Buck was a member of the board. It states that he was on the building committee appointed by the board to superintend the erection of the buildings. It also states that he was the owner of a valuable property in the immediate vicinity, and carries the inference that he was interested in having the county buildings located and maintained on the lot by him conveyed to the board of freeholders. But unless it can be said to have been unlawful for the board to accept the determinable fee in question, I think it is clear that the transaction cannot be successfully impeached at this time.

It is also claimed in behalf of the county that whatever right John Buck had under the deed in question has been lost to him and his heirs by reason of a conveyance made by John Buck to Smith Bowen on November 3d, 1826. It is assumed by counsel of complainant that prior to our act of March 14th, 1851 (*P. L. 1851 p. 282*), the right of re-entry for condition broken could not be assigned (*Southard* v. *Central Railway Co., 26 N. J. Law (2 Dutcher) 13; Bouvier* v. *Baltimore and New York Railway Co., 67 N. J. Law (38 Vr.) 281*) ; and it is urged that the effect of an attempted assignment is to deny to the assignor his right of re-entry and to confer no rights upon the assignee. *Hooper* v.

*Cummings, 45 Me. 359.* To what extent the principles thus urged by complainant may be applicable to a limitation, it is unnecessary to here consider, for an examination of the conveyance from John Buck, above referred to, discloses that the conveyance did not include or attempt to include the county lot here in question or any rights of John Buck therein. As heretofore stated the conveyance to the board of freeholders, here in question, was from John Buck and Daniel P. Stratton, who were owners, as tenants in common, of a larger tract of land, a portion of which was conveyed by them to the county in the manner already fully set forth. Subsequently (March 10th, 1818), Buck and Stratton divided by quitclaim deeds the portion of the tract which was not included in the deed which they had made to the county. In the quitclaim deed from Stratton to Buck the land conveyed was adjacent to the tract theretofore conveyed to the county on three sides of the county tract. The description in the deed was by metes and bounds which included the county tract; at the end of that description, however, the following clause was added: "Containing (after excepting out what was heretofore sold to the county) twenty-four square rods of land, be the same more or less." The *habendum* clause was, "To have and to hold, &c., except that part as before mentioned sold to the county." It is manifest that this deed does not attempt to convey to Buck any reversionary rights of Stratton in the county tract. While the land therein described includes within its boundaries the county tract, the concluding words of the description clearly withdraw from the operation of the preceding part of the description the territory covered by the county's deed; the *habendum* makes a like exclusion. The exceptions are not of the estate conveyed to the county, but are of the territory conveyed to the county; the exception at the end of the description is peculiarly clear in this respect.

Subsequently (November 3d, 1826), John Buck conveyed nearly all of the land covered by the foregoing deed from Stratton to Smith Bowen. The description in this deed was by metes and bounds, and, like the preceding deed, included the tract theretofore conveyed to the county. At the end of the description the following language is added:

"(Excepting thereout and therefrom a certain lot heretofore sold and conveyed by the said John Buck and Daniel F. Stratton to the board of chosen freeholders of the county of Cumberland by deed dated September 1st, 1815, and is recorded in clerk's office of said county in Book EE of Deeds, page 10, &c., reference thereunto will more fully appear) after which said exception there is supposed to contain about twenty perches of land be the same more or less."

It seems equally clear that this deed, in turn, does not convey or attempt to convey the reversionary right of John Buck in the county tract. The exception, at the end of and forming a part of the description, manifestly excepts from the territory covered by the first part of the description the territory covered by the deed to the county.

I reach the conclusion that when the county of Cumberland permanently abandoned the use of the lot in question for county offices an absolute title, as to the undivided one-half thereof, vested in the heirs of John Buck, deceased, by reverter. The title to the alley described in the deed to the board of freeholders was appurtenant to the principal estate granted and necessarily fails with it. The exception from the territorial description contained in the deed from Buck to Bowen includes the alley as clearly as it includes the lot; it follows that the present title of the heirs of John Buck, deceased, extends to the exterior boundary of that alley.