FREDERICK F. GUILD et al., executors, &c.,

v.

THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEWARK
et al.

[Decided November 20th, 1916.]

1. Where a testatrix by her will devised and bequeathed her real and personal property to her husband for life and on his death to her heirs-at-law for distribution according to the laws regulating the descent of realty, testatrix's daughter took a vested remainder in fee on her mother's death, which on the daughter's death intestate vested in her heirs-at-law; the words "on his death" merely denoting the period at which the remainder was to take effect in possession.

2. The word "corporations" in the will under consideration is broad enough to include a municipal corporation.

3. The city of Newark under the terms of its charter has capacity to take real and personal property.

4. While a donee of a power may not exceed the authority conferred he may, unless restricted, appoint a lesser estate.

5. City of Newark may accept a gift of land for the purposes of a park, even though it is empowered to use park lands for any other public use, since, if that were done, the gift would revert to the heirs of the donor.

6. Under the language of the will in question, and the facts of this case, *Held* that the intention of the testatrix to exercise her power of appointment clearly appeared.

On bill, &c.

*Mr. George W. C. McCarter* and *Mr. Robert H. McCarter,* for the complainants.

*Mr. Edward A. Day,* for Yale University.

*Mr. Albert C. Wall,* for Mr. and Mrs. Pennington.

*Mr. Richard Boardman, Mr. Joseph F. Randolph* and *Mr. Gilbert Collins,* for Mrs. Anna H. Condict.

*Messrs. Queen & Stout,* for S. Howell Jones.

*Mr. Spaulding Frazer,* for the city of Newark.

STEVENS, V. C.

This bill prays for the construction of four wills made by members of the family of the late David A. Hayes. The question is whether the effect of these wills is to vest in the city of Newark a valid title to lands and money devoted to the use of a public park.

David A. Hayes died intestate, in 1875, seized of some of the lands in controversy. He left a widow, Caroline D. Hayes, and three children, viz., a son, Howard, and two daughters, Mary and Alice.

Mary married Louis Pennington and died in 1894, leaving a daughter, Mary, who survived her mother but died when only six years old. By her will, made before Mary was born, she provided as follows:

"*Second.* I give, devise and bequeath unto my husband, Louis Pennington, all my real and personal property of whatsoever kind and wheresoever situate * * * for and during the term of his natural life, and on his death to my heirs-at-law to be distributed among them according to the laws now in force regulating the descent of real estate in the State of New Jersey * * *."

On this will Mrs. Condict, a cousin of testatrix, contends that the estate given to the heirs-at-law did not vest in her daughter on her (testatrix's) death, but is a contingent remainder, that will not vest until the death of her husband, Louis; and that the daughter having died in his lifetime, she (Mrs. Condict) is now heir presumptive of the estate devised. The city's contention is that the daughter took a vested remainder in fee on her mother's death, and that when she died it vested in her Uncle Howard and her Aunt Alice as her heirs-at-law. I think the city's contention is correct. The case is the ordinary one of an estate for life with remainder over. There is nothing to indicate contingency. The words "on his death" merely denote the period at which the remainder is to take effect in possession.

*Tuttle* v. *Woolworth, 62 N. J. Eq. 532.* In the cases cited on behalf of Mrs. Condict there were indications of an intention to postpone the vesting. Here there are none. In *1 Jarm. Wills (4th Am. ed.)* § *726,* it is said:

"It may be stated as a general rule that where a testator creates a particular .estate and then goes on to dispose of the ulterior interest, expressly in an event which will determine the prior estate, the words descriptive of such event occurring in the latter devise, will be construed as referring merely to the period of the determination of the possession or enjoyment under the prior gift and not as designed to postpone the vesting. Thus, where a testator devises land to A for life *and after his decease* to B in fee, the respective estates of A and B (between whom the entire fee-simple is parceled out) are both vested at the instant of the death of the testator, the only difference between the devises being that the estate of the one is in possession and that of the other is in remainder."

Jarman's illustration is identical with the case in hand.

How the reference to the statute in force at the date of the will helps the case, I am at a loss to understand. A will sometimes speaks as of the date of its execution. *Quick* v. *Quick, 21 N. J. Eq. 13; Voorhies* v. *Otterson, 66 N. J. Eq. 172.* Here, testatrix's purpose was to give her property, by way of re- mainder, to those who under the law in force at the time she made her will, should be her heirs; not to those who might be- come such under any statute subsequently enacted.

It is plain, then, that the remainder in fee vested in the child Mary, and on her death went to her heirs-at-law, viz., her Uncle Howard and her Aunt Alice.

Caroline D. Hayes, the mother of Howard and Alice, died in 1901, subsequently to her daughter, Mrs. Pennington. She left a will by the ninth clause of which she devised and bequeathed her property to her executors, Howard and Alice, in trust to pay one-half of the income to Howard and the other half to Alice, and in default of issue

"at the death of the survivor of my said two children, in further trust to transfer and pay over the same to such person or persons, or body corporate, absolutely or upon such terms, trusts or conditions as the survivor of my said two children Howard and Alice may by his or her last will and testament designate or provide."

Howard married and died in 1903, leaving no issue. By the second paragraph of his will, made before his marriage, he provided as follows:

"All the rest and residue of my estate, both real and personal, I give, devise and bequeath to my sister Alice W. Hayes for and during the term of her natural life, and after her death to such person or persons, corporation or corporations, as she shall by her last will and testament in writing appoint and in default of such appointment then to the corporation known as Yale College."

It will thus be seen that the property of David A. Hayes, and the residuary estates of Caroline D. Hayes, of Mary Pennington and of Howard Hayes, became subject to powers of appointment vested in Alice. Alice, by her will, gave to her executors, in trust, her own property and that which she was thus empowered to appoint.

By the ninth paragraph, after providing for certain life estates, she devised as follows:

"Upon the termination of said life estates, I direct that said lands and premises (lands lying on Clinton avenue, Newark) and all accumulations of income therefrom shall be conveyed and transferred by my said trustees or the survivor of them to the mayor and common council of the city of Newark, the said land to be used for a public park and for that use only forever and to be called by the name of Hayes Park or Hayes Square."

By the eleventh paragraph she gave the residue of her estate, which is said to amount to several hundred thousand dollars, to her trustees

"to hold under the same trust and for the same purpose as provided in the ninth clause of this will and to convey and transfer and pay over to the said the mayor and common council of the city of Newark, to be used in laying out, grading, beautifying and the general improvement and care of the said lands and premises referred to in the said ninth clause of this will or in purchasing additional lands for said park," &c.

It is urged by those who might otherwise take the property thus appointed (1) that a municipality like Newark is not a corporation within the meaning of the wills of Caroline and Howard; (2) that Newark is not competent to take; (3) that

the power of appointment has been improperly exercised and has therefore failed.

It seems to me too plain for argument that the term "corporation," as used in the wills, is broad enough to include municipal corporations. By its charter (*P. L. 1857 ch. 52*) Newark is made "a body corporate and politic in fact and in name by the name of the Mayor and Common Council of the City of Newark." Municipal bodies have been incorporated from the time of Henry VI. They and the ecclesiastical bodies were the prototypes of all corporations. One has only to glance at Kyd's book published in 1793 to see that even then municipal, ecclesiastical and charitable corporations much exceeded in numbers and importance private corporations, formed for purposes of gain, that now so largely dominate our business life. It is to corporations of the first kind rather than to corporations of the second, that testamentary gifts are commonly made. And, as to the former, I am quite unable to understand how the court could arbitrarily distinguish between them—how it could say, that corporations having a public character were not intended and corporations having an ecclesiastical or educational character were. I think, therefore, that a corporation like Newark comes within the scope of the power of appointment.

The next question is whether Newark has capacity to take. Of this there can be no doubt. By the general rule of the common law, says Kyd (*p. 74*) a body corporate is capable of taking any grant of property in the same manner as private persons. While it cannot be seized of land to the use of another, it may, notwithstanding, if made trustee for charitable purposes, be compelled to perform the trusts. In *Merewether & Stephens' History of Municipal Corporations,* it is said (at *p. 5*) that the very object, originally, of incorporating cities and towns was to enable them to sue and be sued and take and inherit lands. The limitation that has, by American law, been engrafted upon their power of acquisition, is that they cannot take for purposes foreign to their institution. Says Judge Dillon (*Mun. Corp.* § 567): "Not only may municipal corporations take and hold property in their own right by direct gift, conveyance or devise, but the cases firmly establish the principle that such cor-

porations, at least in this country, are capable, unless specially restrained, of taking property, real or personal, in trust for purposes germane to the objects of the corporation."

The charter of Newark gives it the right "of purchasing, holding and conveying any estate, real or personal, for the public use of the city." Among its charter powers, greatly extended by subsequent statutes relating to public parks (*Comp. Stat. p. 4138*), is the power "to regulate, protect and improve the parks, public burial grounds and other public grounds of said city." If it takes and holds land for a park, it takes it for a purpose germane to the purposes of its incorporation. A gift for such a purpose is one which, because of its inherent power to take as an incorporated body, it is competent to' take and hold. In other words, as a corporation, it is competent to take, for an object germane to it, whatever the statute or the policy of the law does not restrain it from taking. The mode of acquisition is immaterial.

The question then comes down to this: Have the powers of appointment been validly exercised? The argument on behalf of the heirs-at-law on this head is that they have not been (1) because a prior life interest has been given to Mr. and Mrs. Pennington; (2) because the gift has been qualified in such a way that the city cannot lawfully accept it.

The first objection is not supported by the authorities. The law is clear that while the donee of the power may not exceed the authority conferred, he may, unless there are words of restriction, appoint a lesser estate than that authorized (*4 Kent Com. ¶ 345*), and may carve out of the fee estates for life and in remainder. *1 Sugd. Pow.* (*7th ed.*) *\*471, 496; Bovey* v. *Smith, 1 Ver. 84; Thwaytes* v. *Dye, 2 Ver. 80; Alexander* v. *Alexander, 2 Ves. Sr. 630; Wilson* v. *Wilson, 21 Beav. 25; Hillen* v. *Iselin, 144 N. Y. 365; In re Appleton's Appeal, 20 Atl. Rep.* (*Pa.*) *521; Butler* v. *Huestis, 68 Ill. 594.*

The objection that Newark cannot, because of the condition, lawfully accept the gift is equally untenable. It seems to be founded on the notion that Newark must, in accepting, contract to do that which the law will not permit it to do, viz., agree that it will *always* call the park Hayes, Park, and will *never* de-

vote it to any other use. This, it is said, the statute (*Comp.*
*Stat. p. 4146 § 18*) forbids, when it provides that whenever any
land in use for a public park may be required for use as a public
highway or for any other public use, "it shall be lawful for the
municipal or other authority having the title, use, management
or control thereof, to consent to the use of the same for such
new public use." It may be true that Newark cannot *agree*
that the land appointed shall "be used for a public park and
for that use only forever." But it is not called upon to agree.
It simply takes the estate given to it—that is, a qualified fee—
which will revert to the heirs of the donor when the par-
ticular use is discontinued. Numerous illustrations may be
found in our own reports, the most noted being that of the
Morris canal. In *State* v. *Brown, 25 N. J. Law 20*, the deed
granted the land to the canal company "as long as used for said
canal," and Chief-Justice Green said: "By the terms of the
conveyance the grantees take a qualified fee, liable to be de-
feated whenever they cease to use the land for the purposes
specified in the grant. Yet, while the estate continues, and
until the qualification upon which it is limited is at an end, the
grantee has the same rights and privileges over his estate as if
it were a fee-simple." Other illustrations are found in *Southard*
v. *Central Railroad Co., 26 N. J. Law 13; Cornelius* v. *Ivins,
26 N. J. Law 376; New Jersey Zinc and Iron Co.* v. *Morris
Canal and Banking Co., 44 N. J. Eq. 398.* The word "forever,"
so commonly employed in conveyancing parlance emphasizes,
but does not add to, the duration of the estate. The gift is, in
the quaint language of the old cases, made to a body possessing
immortality—that is, indefinite duration.

Other objections to the gift have been made, but they are
without substance. It is said that while the will of Mrs. Hayes
confers a general power of appointment, that of Howard Hayes
does not. One has only to read it to see that the power con-
ferred is, in terms, unlimited.

"All the rest and residue of my estate I give (after the death of
Alice) * * * to such person or persons, corporation or corporations,
as she (Alice) shall by her last will and testament in writing appoint."

Then it is said the gift has failed because Alice's intention to exercise the power does not clearly appear. But it is evident that by paragraph 8 she intended to exercise the power conferred by Howard's will, and by paragraph 10 the power conferred by Caroline's. She so expressly states. By the eleventh, which is the residuary clause, after giving all her estate to be held on the trust provided for in the ninth paragraph, she adds:

"It being my intention hereby to vest in my executors in fee-simple all the property not hereinbefore specifically disposed of, held or controlled by me at my death or which I have or may have power to dispose of under the power of appointment in the will of my said brother (Howard) or in the will of my mother, Caroline D. Hayes, or in or under any other will or instrument or otherwise."

Notwithstanding these explicit declarations, it is argued that Alice does not state that she is exercising her power of appointment in paragraph 9. She does, however, state, in paragraph 8, that she is disposing of the estate "given" to her, "pursuant to the power conferred" by her brother's will, and what she *"gives"* by paragraph 9 is a part of this estate.

The two tracts of land described in paragraph 9 belonged to her father. On his death intestate, they descended to Howard, Mary and Alice. By Mary's will, as has been already shown, her share, subject to her husband's life estate, vested in her daughter Mary. On Mary's death her share went half to Howard and half to Alice; so, that Howard and Alice became each entitled to an undivided half. Then Howard died and gave Alice the power of appointment in question. Paragraph 9 reads:

"I give and devise to my executors hereinafter named all my right, title and interest both that held by me or due me or which will become part of my estate on the termination of the life interest therein of my brother-in-law, Louis Pennington, and the termination of the life interest therein of my said sister-in-law, Mary Vanderpool Hayes, given to her in paragraph eight of this will in the two tracts of land and premises in said city of Newark," &c.

This paragraph, it will be observed, refers, first, to the title and interest originally her own, viz., one-third; second, to the title and interest of the deceased child Mary, to become part of

her estate in possession on the termination of the life interest of her brother-in-law—an interest which he could claim either as tenant by the curtesy or under his wife's will, and third, to the title and interest which she had derived from Howard, out of which, he having failed to make provision for his wife (his will antedating his marriage), Alice had given to her a life right, to carry out what she believed to be Howard's wish, defectively expressed in an unexecuted paper. As the result of this analysis, I think there can be no reasonable doubt that what Alice intended should pass under clause 9 was Howard's interest as well as her own. She does not, perhaps, in apt language, expressly *appoint* this interest, but she says, in paragraph 8, that she intends to dispose of her brother's estate pursuant to the power conferred upon her, and in paragraph 9 she specifies this interest and says that she *gives* it with her own in trust for Newark. She treats the estate bequeathed and devised to her by Howard for life, with power to appoint it after her death, as *given* to her, as for all practical purposes it was. She says:

"Whereas my brother, Howard, now deceased, did in and by his last will and testament give, devise and bequeath all the rest and residue of his estate and after my death to such persons or corporations as I should by will appoint. Now, therefore, pursuant to the power conferred upon me, I hereby dispose of the estate, real and personal, *given* to me under the will of my said brother as follows."

What is so given, she then *gives* for life to his widow, with a remainder in trust for Newark. Can anything be clearer than that by "give" she means "appoint?"

But if Howard's interest in the land does not pass under paragraph 9, it does, beyond all manner of doubt, by paragraph 11. It is argued that if it passes under this clause, it creates an impracticable situation, that only an undivided half being given by paragraph 8, the other undivided half must be devoted to grading, beautifying and maintenance. I very much doubt whether this is the reasonable construction or effect of paragraph 11; but its construction in this regard is immaterial if Howard's interest in the two tracts passed under paragraph 9, as I have found that it did.

It is unnecessary to consider the other questions raised by the bill. They have either been disposed of or do not, in view of the decision on the principal question, need consideration.