CAMDEN COUNTY CIRCUIT COURT.

ANNA HEWITT ET AL., PLAINTIFFS, v. COUNTY OF CAMDEN AND BOARD OF EDUCATION OF THE CITY OF CAMDEN, DEFENDANTS.

For the plaintiffs, *Philip Wendkos, William C. French, Louis B. LeDuc* and *Waddington & Mathews.*

For the board of education of the city of Camden, *Harold W. Bennett.*

For the county of Camden, *Walter S. Keown.*

JESS, J. The plaintiffs have resorted to the statute of New Jersey entitled "An act concerning declaratory judgments and decrees," approved March 11th, 1924 (*Pamph. L.* 1924, *p.* 312), for an adjudication of the title claimed by them in cer-

tain lands, as the heirs-at-law of the grantors. The defendants join with the plaintiffs in submitting for determination by the court, siting without a jury, and upon a stipulation of facts, the following issue:

Have the heirs and assigns at law of the parties of the first and second parts named in the deed of June 23d, 1804, mentioned in paragraph 2 of the amended complaint herein, any estate, right, title or interest in the premises herein involved and described in paragraph 1 of the amended complaint herein; and if so, what estate, right, title or interest?

It is further stipulated that a decision adverse to the claim of the plaintiffs shall be deemed dispositive of the issues, subject only to the right of appeal.

The land as to which the controversy arises is a lot situate in the city of Camden on the westerly side of Sixth street, between Market and Arch streets, and upon which the Genge public school formerly stood. This land will hereinafter be designated as "the Genge tract." On June 23d, 1804, Joseph Lyon and others conveyed their title in fee to the Genge tract, by deed of bargain and sale, to Edward Smith, William Flintham, George Genge and Thomas Ackley, in trust, for the uses declared in the conveyance, and which are hereinafter set forth. This deed will be designated as "the deed of 1804."

By act of the legislature of New Jersey (*Pamph. L.* 1854, *p.* 353), the acting trustee or trustees, or persons having control of the land described in the deed of 1804, were authorized to convey the premises to the board of education of the city of Camden.

Thereafter, on January 26th, 1856, Edward Smith, the sole surviving trustee, executed and delivered a deed for the premises to the board of education. This deed hereinafter will be referred to as "the deed of 1856." The grantees named in this deed went into possession and used the property for school purposes until the summer of 1927. In April of that year the board of education entered into an agreement with the county of Camden by the terms of which the board agreed to sell or

lease, and the county agreed to buy or lease, all of the board's right, title and interest in the Genge tract. Following this agreement, in September, the school building that stood on the tract was razed and early in 1928 the work was started of constructing foundations thereon for the court house annex to be built upon the Genge tract and adjoining lands. Pursuant to a provision of this agreement the amount to be paid by the county to the board of education as the purchase price of the land was fixed by the late Mr. Justice Katzenbach, after hearing evidence as to the market value thereof, at $330,000. The board of education subsequently filed in the Court of Chancery a petition for permission to sell the Genge tract to the county of Camden, under the provisions of an act of the legislature (*Pamph. L.* 1905, *p.* 287), which authorizes the sale of trust properties in cases where it is found impracticable to devote the property to the uses designated by the donor. The proceedings thus instituted resulted in the entry of a decree, on March 5th, 1929, authorizing the sale in accordance with the prayer of the petition. This decree was based upon the report of the special master, to whom the matter was referred, that in his opinion the land in question was no longer adapted for school purposes because of the change in conditions in the area contemplated to be served by the school. The decree directed that the board of education should use the proceeds of the sale of the property as a capital fund to defray the cost of the erection and equipment of a school or schools, in order that said fund may be used as nearly as possible in accordance with the trust provisions of the original deed. In pursuance of the decree, and of the agreement before mentioned, the board of education has conveyed the Genge tract to the county of Camden.

The plaintiffs contend that the legal consequence of the foregoing facts is to work a reversion of the title to the land to them as the heirs of the original grantors. That contention presents the sole issue to be decided in this proceeding.

To answer that question it is essential, first, to determine whether the deed of 1804 created a public charitable trust.

The consideration named in that deed is one dollar paid to each of the grantors and "divers other good causes and considerations * * * and especially for settling adjoining the two several lots of ground, tenements and hereditaments hereinafter described unto and upon such uses and trusts as are hereinafter expressed and declared." The grant is to the grantees and to their heirs forever. The *habendum* is to the grantees, "their heirs and assigns to and for their own proper use and behoof forever. In trust, nevertheless, to and for the several uses, intents and purposes hereinafter mentioned and declared of and concerning the same, that is to say, upon special trust and confidence that the said trustees and the survivors and survivor of them and their and his heirs shall and will from time to time and at all times hereafter forever permit and suffer such of the freeholders of the said town of Camden as have already subscribed or shall or may hereafter subscribe towards the expenses of erecting the buildings hereinafter mentioned to erect and build upon the lot or lots of ground aforesaid hereby granted or on some part or parts thereof a school house for the instruction and education therein of the children of the freeholders of the said town of Camden, whether such freeholders be inhabitants of the said town or not, and of the children of all and every such other person and persons as shall inhabit or dwell within the said town of Camden, and also at will and pleasure to erect and build upon the said lot or lots of ground hereby granted or on some part or parts thereof a dwelling house for the residence of the preceptor or teacher or preceptors or teachers of the said school for the time being, and also at will and pleasure to erect and build thereon all necessary houses of office and other out-houses for the convenient accommodation of the said school house and dwelling house, respectively, and also to repair and rebuild and occupy the same as aforesaid from time to time forever." "And upon this further trust, that if after the children hereinbefore designated shall from time to time have been first admitted as scholars into the said school there shall remain any vacancies, such vacancies may

from time to time be filled by the children of the neighborhood for whom application for admission may be made. And upon this further trust, that the said school so to be opened as aforesaid shall be governed by such rules and regulations as the freeholders of the town of Camden who have already subscribed or shall or may hereafter subscribe as aforesaid shall from time to time prescribe, ordain and establish, and upon this further trust, that they, the said Edward Smith, William Flintham, George Genge and Thomas Ackley and the survivors and survivor of them and their and his heirs shall and may from time to time make leases of the premises or of such part and parcel thereof as they may think proper and otherwise manage, improve and dispose of the same so always nevertheless that a school shall be kept upon the premises for the instruction and education of the children aforesaid in manner aforesaid, and so also that all rents, issues, profits and moneys that may from time to time be had or obtained from the premises or from any part thereof shall be applied to the maintenance and support of the said school and to the repairs of the buildings and all other incidental expenses thereof."

Clear and comprehensive definitions of public charities and charitable trusts are collated in the opinion of the late Mr. Justice Katzenbach, speaking for the Court of Errors and Appeals, in *Noice* v. *Schnell,* 5 *N. J. Adv. R.* 764. Among these are the following:

"A charity in its legal sense may be more fully defined as a gift, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it be so described as to show that it is charitable in its nature. *Jackson* v. *Phillips, 96 Mass.* 539."

"Charitable trusts include all gifts in trust for religious and educational purposes in their ever varying diversity. 2 *Perry Trusts* (*5th ed.*) 314."

"A gift is a public charity when there is a benefit to be conferred on the public at large, or on some portion thereof, or upon an indefinite class of persons. 5 *R. C. L.* 293, § 3."

"Trusts for the establishment and support of free or public schools are favored by the courts and bequests for such purposes have repeatedly been upheld as valid charities or as creating valid trusts for charitable uses. 8 *Am. & Eng. Ann. Cas.* 925."

In the light of the foregoing definitions, which are only a few of many of the same purport that might be cited, it is manifest that the deed of 1804 created a valid charitable trust, public in its nature.

While it is not formally stipulated as a fact, I think from evidence before me there can be no question that the trust actually vested in the trustees and was executed by them over a long period. This is indicated by the preamble to the legislative act of 1854, *supra,* authorizing the sale of the Genge tract to the board of education. Moreover, the law presumes that every gift, whether in trust or act, is accepted until the contrary is proved. *Perry Trusts* (*6th ed.*) 447, 448. There has been no proof to rebut this presumption. Indeed the theory of the plaintiffs' case necessarily presupposes a vesting of the trust, since their claim rests upon an alleged breach of the trust, and there could be no breach of a trust that had never vested or been accepted. With respect to the deed of 1856, it is stipulated that the board of education took title to the land and maintained a school house thereon in which classes were regularly conducted until the summer of 1927. Nor can there be any question that the board of education, as well by virtue of statutory authority as by its implied powers, had the capacity to take and hold title to the Genge tract for the purposes of the trust. *Pamph. L.* 1854, *ch.* 35, *p.* 88; *Guild* v. *Newark,* 99 *Atl. Rep.* 120; 8 *Am. & Eng. Ann. Cas.* 927.

The second question to be considered is this:

Has the conveyance of the Genge tract by the board of education of the city of Camden to the county of Camden and its use by the county for a purpose not within the terms of the trust upon which the land was held, effected a reversion of the title to the heirs-at-law of the grantors in the deed of 1804?

The plaintiffs argue that this question must be answered in the affirmative because, they say, the deed of 1804 to the trustees, or the deed of 1856 by the surviving trustee to the board of education, or each of the deeds, conveyed a determinable, or limited fee, or was a conveyance upon a condition subsequent.

The deed of 1804 declared the trust and prescribed its terms. The subsequent conveyance of 1856 by the surviving trustee, executed under the sanction of a legislative enactment, was in furtherance of the execution of the trust and certainly must be construed as being consonant with the terms thereof. So that, whether the conveyance was of a determinable fee or upon a condition, must be determined by the terms of the original grant.

The language in the deed of 1804 which the plaintiffs insist constitutes a limitation or condition upon whcih the estate was granted, reads as follows:

"\* \* \* so always nevertheless that a school shall be kept upon the premises for the instruction and education of the children aforesaid in manner aforesaid."

These words follow a provision that the trustees "may from time to time make leases of the premises or such part and parcel thereof as they may think proper and otherwise manage, improve and dispose of the same." Read in connection with its context the restrictive provision probably was intended to qualify and limit the power given the trustees to lease, manage and dispose of the property. Even, however, if we give to the clause the broadest effect of which it is susceptible, it must be treated, not as constituting a condition or a determinable fee, but rather a limitation in trust.

This conclusion is supported by a long line of authorities in this state, a number of which are referred to in *MacKenzie* v. *Trustees,* 67 *N. J. Eq.* 652; 61 *Atl. Rep.* 1027, and in *Mills* v. *Davison,* 54 *N. J. Eq.* 659; 35 *Atl. Rep.* 1072. In some of the cases cited estates had been granted upon clearly expressed conditions that they should be devoted to specified charitable uses, and it was held that a failure to use them for such purposes did not result in a reverter.

In the case, *In re Young Women's Christian Association of New York City,* 126 *Atl. Rep.* 610, there was involved a charitable devise the terms of which were set out in meticulous detail and in which it was provided that in the event of the failure of the conditions of the gift, the estate devised should revert. Vice-Chancellor Fielder, following *MacKenzie* v. *Trustees, supra,* held that the terms of the gift were not conditions subsequent but were limitations in trust and that there was no reverter.

In support of their contention that the trustees under the deed of 1804 took only a determinable fee, the plaintiffs cite *Board of Freeholders of Cumberland County* v. *Buck et al.,* 79 *N. J. Eq.* 472; 82 *Atl. Rep.* 418. In that case the land in controversy was conveyed to the board of freeholders to have and to hold, "so long as the same shall be used for the purpose herein before mentioned and no longer." The use of the property for the purpose named in the deed was permanently abandoned. The contention of the county was that the language of the deed relating to the use of the premises conveyed must be construed as a covenant. Vice-Chancellor Leaming held that the deed vested in the grantees a determinable fee. He pointed out the distinction between words of condition and words of limitation, and decided that the provisions of the deed in question so clearly and adequately created a limitation that it was impossible to regard the language used as not having been intended to defeat the estate granted "or as in the nature of a covenant or trust." The phrase quoted sufficiently differentiates that case from the one *sub judice.*

Counsel for the plaintiffs also rely upon the deed of 1856 to support their claim to title by reversion. It is argued that a limitation of the fee is found in that deed because, in the language of that act which authorizes a conveyance to the board of education by deed, "which shall vest in said board a good and valid title to said real estate as against said acting trustee, or any person claiming title to the said premises, so long as the same are used by the said board exclusively for the purpose of education."

The grant is to the board of education of the city of Camden, their successors and assigns. The *habendum* is to the board, "their successors and assigns to and for the only proper use and behoof of the said, the board of education of the city of Camden, their successors and assigns forever."

It is manifest that by the deed of 1856 there was a conveyance in fee, without any limitation, unless such limitation was intended to be created by the recital of the legislative act in the premises of the deed. Construing the grant and the *habendum* in the light of that recital, the most that can be said is that the intent of the grantor was to convey the land subject to the same limitation as that imposed by the deed of 1804, to wit, a limitation in trust.

It is fairly inferable that the purpose of the legislature in inserting in the act of 1854 the clause cited was to safeguard the charitable object of the original grantors of the land that it should be used for educational purposes. If that be so, the stipulation, "so long as the same are used * * * exclusively for the purposes of education," may be regarded as a paraphrase of the clause in the deed of 1804, "so always nevertheless that a school house shall be kept upon the premises." It must be assumed, at least, that the legislature did not intend, by anything contained in the act permitting the sale of the property, to create any limitation upon the estate granted, or to set up any scheme for the use of the property not within the expressed intent and objects of the original grantors, inasmuch as any such purpose would not be within the legislative power. 5 *Am. & Eng. Encycl. L.* 516, citing

*Tharp* v. *Fleming,* 1 *Houst.* (*Deal.*) 580; *Cary Library* v. *Bliss,* 151 *Mass.* 364; *Greenville* v. *Mason,* 53 *N. H.* 515.

Considering all the parts of the deed of 1856 together, including the recital of the trust provisions in the original conveyance and of the legislative act, it is clear that, by virtue of that deed, title in fee was vested in the board of education for the purposes of the charitable trust declared in the original grant, without any limitation, saving only a limitation in. trust.

*Freeholders* v. *Buck, supra,* is not an authority contrary to this view. The question of a charitable trust did not arise in that case and therefore the rationale of the decision has no application to the problem here presented. Conclusive evidence of that fact is supplied by the later opinion of Vice-Chancellor Leaming in *Cuthbert* v. *McNeill,* 142 *Atl. Rep.* 667; *affirmed* by the Court of Errors and Appeals, 7 *N. J. Adv. R.* 832. In that case the court dealt with a question essentially the same as that to be decided in this proceeding. The claim there was, as the claim here is, that by reason of the failure to use the land for the purposes specified in the grant, and its sale by the trustees under the statute of 1905, *supra,* the trust had been broken and that, in consequence, the title had become vested by reverter in the heirs-at-law of the grantor. The learned Vice-Chancellor, citing *Mills* v. *Davison, supra; MacKenzie* v. *Trustees, supra,* and other authorities, shows that a resulting trust does not arise in favor of the heirs-at-law of donor of a public trust, by reason of the abuse of such trust; that if a charitable trust takes effect in the first instance, the heir-at-law is disinherited once and for all; that when a valid charitable trust has been created without a provision for a reversion, it raised an implied condition against a reverter, permanently excludes the interests of the heirs and next of kin, and does not leave them so much as a "scintilla of right;" that the remedies for non-performance of a charitable trust are available alone to the attorney-general, in behalf of the public, and to the trustee or *cestui que trust,* in aid of the trust. These remedies do not contem-

plate forfeitures of title for breach of the trust, or impracticability of performance by reason of changed conditions. This exposition of the law is entirely opposite to the question under consideration, and demonstrates the inconsistency of the theory of reverter with the rule that a charitable trust which has once taken effect can never cease during the period, perpetual or otherwise, for which it was intended to subsist. A reversion would necessarily terminate the trust and defeat the charitable objects to its donor.

As has been indicated, I am satisfied that the deed of 1804 and the trust imposed thereby, are the controlling factors in the determination of this case. Assuming, however, that the plaintiffs' rights are to be tested by the deed of 1856 and that that deed contained a limitation, the authorities heretofore cited lead irresistibly to the same conclusion as has been reached with regard to the restrictive provision in the deed of 1804, namely, that it is a limitation in trust and not a condition, the breach of which gives the heirs a right to re-enter or a limitation of the fee which, *ipso facto,* effects a reverter.

The findings of the court will be filed in accordance with the conclusions reached, and for the reasons stated, in this memorandum.