708 A.2d 787

IN THE MATTER OF THE TRUST FOR THE BENEFIT
OF ELAINE JOHNSON WOLD.

Superior Court of New Jersey
Chancery Division
Middlesex County

Decided January 5, 1998.

*Adrian M. Foley*, for plaintiffs, Trustees (*Connell, Foley and Geiser, L.L.P.*, attorneys) *Maureen J. O'Connor.* On the brief.

HAMLIN, P.J., Ch. Div.

This written decision amplifies an earlier oral bench opinion rendered on plaintiff's petition for interpretation and direction regarding the application of the "New Jersey Uniform Statutory Rule Against Perpetuities". *N.J.S.A.* 46:2F–1–8 to a proposed exercise by the beneficiary of her power of appointment under the terms of this 1944 Trust. It is an issue of first impression requiring the court to determine if the ninety year period of *N.J.S.A.* 46:2F–1–8 enacted on July 3, 1991, may be invoked by the beneficiary in regard to the exercise of that power of appointment vested in her by the 1944 Trust. The issue arises following inquiry by Elaine Johnson Wold, the life beneficiary of the Trust, to the Trustees. More specifically she advised the trustees that she wishes to create a testamentary Trust appointing the proceeds of the 1944 Trust in further trust for the benefit of her spouse and surviving issue. The proposed testamentary trust would create non-vested property interests in one or more issue. By way of illustration the proposed exercise of the power in a new testamentary trust created by Mrs. Wold would permit property held for one of her children, upon the death of that child, to continue in

trust for the benefit of that child's own issue. Thus, the trust interest of that child would be considered non-vested since it would pass to the next generation upon the occurrence of a specific event, *i.e.* the death of the child.

The proposed exercise of Mrs. Wold's power of appointment under the 1944 Trust through the creation of her own testamentary trust would permit such generational structure to continue for the full period permitted under the Rule Against Perpetuities. In delineating the maximum term of the trust she would create for her spouse and issue, Mrs. Wold has expressed to the trustees her intention to rely on the ninety year "wait and see" perpetuities period as codified in the 1991 legislation.

In order to ensure the validity of her long term estate planning and to make certain that the trustees will be permitted to make distributions of the trust estate in accordance with her expressed intentions Mrs. Wold, through the trustees, asks this court to determine the applicability and construction of the New Jersey Rule Against Perpetuities Act as it applies to tile exercise of her special power of appointment. In the absence of clear and binding precedent or other authority, neither Mrs. Wold nor the trustees can be assured that the intended disposition will not be later found to violate the applicable rule against perpetuities. Without a present determination, there exists the possibility that the testamentary trust created by Mrs. Wold might, after her death, be voided or reformed in a manner that is inconsistent with her expressed intention.

In addition, the trustees seek direction from the court regarding the proposed testamentary exercise of Mrs. Wold's power of appointment under the terms of the 1944 instrument. They assert that they are in doubt as to whether the power granted Mrs. Wold to dispose of the trust *res* includes the power to appoint the trust assets by a successive testamentary trust. The trustees seek to invoke the traditional equitable power of the Chancery court to resolve their concerns about the exercise of their fiduciary duty as governed by the provision of the original trust which states.

> Upon the death of Elaine Johnson Wold, the Trustees are directed to divide, transfer and pay over absolutely, outright and forever, the trust property as follows: to the surviving spouse and issue of Elaine Johnson (Wold) or any of them in such shares as she may direct by her Last Will and Testament duly admitted to probate. . . .

All persons having an interest in the issue presented have been served and have chosen not to take a position on the application.

### Creation of the 1944 Trust

J. Seward Johnson (hereinafter Seward) created this trust on October 20, 1944 to benefit his daughter Elaine Johnson Wold. It was one of several trusts he created contemporaneously for each of his children. Each was identical in language with the exception of the named beneficiaries. Subsequently the settlor created at least two additional charitable lead trusts to further benefit his issue. The trust plan was neither haphazard nor one dimensional. The trusts were initially funded by substantial shares of the health care corporate giant, Johnson and Johnson, (J & J). Seward and his brother, Robert Wood Johnson were the principal heirs of the controlling stock of J & J, which was already a major national corporation at that time. Robert Wood Johnson succeeded to the leadership of the company. Through his efforts and subsequent astute business management, J & J has become a major international diversified business presence. Thus, the original 15,000 shares of J & J stock which initially funded the trust have multiplied in value so that they now constitute one of the most significant family fortunes in America. Since J & J has been headquartered in New Brunswick, New Jersey for over a century and the trusts were created here, the Middlesex County Courts and more specifically the Chancery Division of this venue, have had long interaction with the construction and administration of the various trusts created by Seward. Many accountings have been presented over the years. Specific previous applications by trustees have been the subject of decisions and unpublished opinions. Likewise there has been significant litigation involving the trusts, their creation and purpose, which resulted in published opinions that are helpful to our overall understanding of the trust

scheme established by Seward with the assistance of sophisticated estate planning counsel. *See Hill v. Estate of Mary Lea Johnson Richards,* 142 *N.J.* 639, 667 *A.*2d 695 (1995); *Wiedenmayer v. Johnson,* 106 *N.J.Super.* 161, 254 *A.*2d 534 (App.Div.1969), *aff'd* 55 *N.J.* 81, 259 *A.*2d 465 (1970); *Barbara P. Johnson v. J. Seward Johnson, Jr.,* 212 *N.J.Super.* 368, 515 *A.*2d 255 (Ch.Div.1986); and *Burke v. Director, Division of Taxation,* 11 *N.J. Tax* 29 (1990).

The trust instrument itself is comprehensive and clearly designed to accomplish several salutory ends. Foremost is the provision for support and income to the beneficiary and such of her heirs as she may select. Such income was maximized to the fullest by utilizing tax saving devices permitted by law. While not directly related to this application the trusts facilitated the corporate advancement of J & J by reposing the voting control of trust stock in J & J executives who would have an interest in increasing the value of the res.

Under the terms of the Trust, the trustees were directed during the lifetime of Elaine Johnson Wold to collect and receive the income and profits from the trust property and, after deducting those expenses of "the trust" which are payable out of the income, to accumulate the net income and add it at the end of each calendar year to the trust property. Once Elaine Johnson Wold attained the age of twenty-one (21) years, the trust agreement authorized the trustees to pay to her so much of the net income in any year as the trustees in their absolute and uncontrolled discretion deemed to be for her best interest. The trust instrument further permits the trustees to transfer and pay over to the life beneficiary "... any or all of the Trust property."

Upon the death of Elaine Johnson Wold, the trust agreement directs the trustees to divide, transfer and pay over absolutely, outright and forever, the trust property as follows:

  a. **To the surviving spouse and issue of Elaine Johnson (Wold) or any of them in such shares as she may direct by her last Will and Testament duly admitted to probate,** or failing such testamentary direction, then, (emphasis added)

  b. To her issue in equal shares per stripes, or failing such issue, then

c. To divide the trust property into as many equal shares as there shall be children of the Grantor now in being and then surviving and the issue collectively of any child of the Grantor now in being who may predecease Elaine Johnson (Wold) leaving issue surviving, one such equal part for the benefit of each such surviving child of the Grantor, and one such equal part for the issue collectively of each such deceased child of the Grantor; and to pay over such share so set apart for the benefit of a surviving child of the Grantor to the Trustees of a child by agreement bearing even date herewith, and to distribute and pay over such share so set apart for the issue collectively of a deceased child of the Grantor to such issue in equal shares per stirpes; or failing all such issue of the Grantor, then,

d. To those persons, other than the Grantor, who under the laws of New Jersey then in force would be entitled to inherit form Elaine Johnson (Wold) (had she died intestate domiciled in New Jersey) personal property located in New Jersey of which she died possessed and in the same proportions as they would be so entitled; or failing such persons, then

e. To and among such education, religious or charitable corporations as the Trustees in their discretion may select and designate and in such amounts respectively as they may determine.

### The Trustees' Right to Seek Instructions

The Trustees have been notified by the life beneficiary, that it is her intention to protect the future financial well being of "her surviving spouse. . . . and issue or any of them" through the utilization of a testamentary trust for the benefit of her spouse, children and grandchildren. To accomplish that purpose she intends to leave a portion of the trust assets for the direct benefit of those persons named in the Trust including her two granddaughters through the utilization of trust concepts.

The Trustees have also been informed that Mrs. Wold, in establishing the aforementioned testamentary trust, would create non-vested property interests. Therefore, in establishing the trust, Mrs. Wold intends to avail herself of the ninety-year perpetuities period contained in the New Jersey Uniform statutory Rule Against Perpetuities, *N.J.S.A.* 46:2F–1 to 8.

There is no question as to the Trustees' right and duty to seek judicial instruction where a valid question exists as to an appropriate construction of a trust instrument. Express authority is found in *N.J.S.A.* 3B:14–24 and the Declaratory Judgment Act, *N.J.S.A.*

2A:16–53, 55. As a practical matter there is little if any distinction between the authority conferred by these two statutes. *Trustees of Rutgers College v. Richman,* 41 *N.J.Super.* 259, 125 A.2d 10 (Ch.Div.1956). The question raised by the expressed intention of the beneficiary presents substantial and timely issues for the Trustees to answer with the guidance of the court. The beneficiary has substantial and immediate choices to make regarding her estate planning which hinge upon the application of the law. Neither she nor the trustees can afford error which, by the time it was so determined, would be irreparable. The issue before this court presents a real and present justiciable issue. The Court's decision is necessary to govern the trustees' present action and the beneficiary's execution of her power of appointment under the terms of the 1944 trust.

### Does the Trust prohibit the proposed exercise?

At the threshold this court notes that the trust instrument, by its very language, vested in the trustees the broadest possible discretion that may be found in any trust instrument. They are to be guided solely by *their* evaluation of the beneficiary's best interest. Clearly the settlor intended to repose in the Trustees maximum flexibility in addressing the needs of the beneficiaries. By way of illustration it is clear that had the Trustees distributed the entire income and corpus to Mrs. Wold during her lifetime, leaving nothing to be appointed to subsequent heirs, it would have been permissible absent claim of corruption, intentional misconduct or gross negligence. In regard to the instant matter this court is mindful that the sole inference from the unambiguous language of the trust instrument was the desire of the settlor to create a flexible instrument to meet the developing needs of his children both at the time of the creation of the trust and for unforeseen events that would occur. It is an expansive rather than a restrictive instrument.

The law of trusts lends support to Mrs. Wold's position that she should be able to exercise the special power of appointment

created by her father. Seward, in a testamentary trust by her for the benefit of her granddaughters. *The Restatement (Second) of Trusts* § 17 provides that "[a] trust may be created by ... (d) an appointment of one person having a power of appointment to another person as trustee for the donee of the power or for a third person."

The comments to the section explain that "[i]f a person has a special power of appointment ... he can effectively appoint interests to trustees for the benefit of objects of the power, unless the donor manifested a contrary intent." *Restatement (Second) of Trusts,* § 17 cmt. f. Further, it is clear that one can infer that the donor of a special power intended the donee to have the same discretion in making an appointment that he had in the disposition of this own property, so far as the extent and nature of the interests which he might give to the members of the class are concerned. *Id.; see also Restatement (Second) of Property,* § 19.3 (1984).

It has long been accepted that a person holding powers of appointment may appoint to the fullest extent of the authority or to such lesser estate or interest as he may see fit in the absence of an express prohibition by the settler in the trust instrument. *Guild v. Mayor and Common Council of City of Newark,* 87 *N.J.Eq* . 38, 99 *A.* 120 (1916). That doctrine has been followed without question. *See Marx v. Rice,* 1 *N.J.* 574, 65 *A.*2d 48 (1949); *National State Bank of Newark v. Morrison,* 9 *N.J.Super.* 552, 75 *A.*2d 916 (Ch.Div.1950).

The general rule supporting the exercise of a lesser appointment in the absence of a restriction in the trust instrument may be found in other jurisdictions. The commonwealth of Massachusetts has adopted the principal by statute. *Mass.Gen.Laws, Ann,* Ch. 191–1. New York has reached a similar result in a series of cases. *See In re Hart's Will,* 262 *A.D.* 190, 28 *N.Y.S.*2d 781 (1941), *In re Nicholas' Will,* 284 *A.D.* 971, 134 *N.Y.S.*2d 809 (1954), *aff'd* 308 *N.Y.* 971, 127 *N.E.*2d 337 (1955); and *In re Reynal's Will,* 58 *Misc.*2d 518, 296 *N.Y.S.*2d 158 (Sur.Ct.1968).

While the trust instrument speaks in terms of appointment including distribution of the corpus in fee simple, if the beneficiary saw fit, it should not be construed as a form of limitation. The hallmark of this trust, as the others, is the flexibility of the trustees, and implicitly the donee of the power, to be permitted maximum discretion.

The court is not unmindful of the clear purpose of the settlor to protect the trust from tax burdens to the fullest extent permitted by law. There can be no question that the proposed testamentary trust exercise of the power will effect significant tax savings. As this court observed in a matter involving another long term trust created by Seward, one of the significant purposes of the Trust scheme was "... that the Grantor was able to shelter the fund and its appreciation in value from his estate for estate tax purposes and to incorporate then permissible generation skipping features." Such a purpose, as evidenced by the sophisticated estate planning devices used by Seward, are to be given effect in the exercise of the power of appointment rather than restricted. The proposed creation of the testamentary trust as described by Mrs. Wold is well within the contemplation and intent of the trust instrument. The trustees may honor the proposed exercise of the power of appointment at the appropriate time and make a consistent distribution of the trust assets.

### The Application of N.J.S.A. 46:2A–1–5

New Jersey adopted the Uniform Statutory Rule Against Perpetuities on July 3, 1991. In so doing it adopted the "wait and see" approach long advocated by reformers of the common law rule against perpetuities so painfully committed to memory by generations of law students. The statute may well sound the death knell for Leach's *"Perpetuities In A Nut Shell"*.

Under the common law approach, if an interest was not certain to vest with the specified period, then the disposition was considered invalid. Under the Act, an interest that would have been invalid at common law, is nevertheless valid if it does in fact vest

within ninety years of its creation, and becomes invalid only if it remains in existence and does not ultimately vest within that time period. Under the statutory provision, "a non-vested property interest is invalid unless: (2)[W]hen the interest is created, it is certain to vest or terminate no later than 21 years after the death of an individual then alive; or (2)[t]he interest either vests or terminates within 90 years after its creation."

The Statute, in a specific and distinguishable fact pattern, was applied prospectively. In *Juliano & Sons Enterprises, Inc. v. Chevron U.S.A. Inc.*, 250 *N.J.Super.* 148, 593 *A.*2d 814 (App.Div. 1991), which is the only reported New Jersey decision that has addressed the new statute, the court held that the statutory rule was not retroactive and intended to apply only to property interests created on or after the effective date of the statute. *See also U.L.A. Perpetuities* § 5 (1990). Thus, an interest created under a trust established in 1944 would arguably not fall under the new legislation.

■ However, while the statute may not apply retroactively as a general matter, for purposes of determining the applicability of the new statutory period the law specifically provides that an interest created pursuant to a power of appointment is deemed to be created *upon the exercise of power.* *N.J.S.A.* 46:2F–5(a). Therefore, even if created under a pre-existing power of appointment, the New Jersey Uniform Statutory Rule Against Perpetuities would apply to an interest created under that power, whether general or specific, if exercised after July 3, 1991.

This interpretation is supported by the clear language of the statute as well as by the comments to the Uniform Laws Annotated. "All provisions of the [Uniform] Act except section 5(b) apply to a non-vested property interests (or power of appointment) created by a donee's exercise of power of appointment where the donee's exercise, whether revocable or irrevocable, occurs on or after the effective date of [the] Act." (Section 5(b) allows reformation of non-vested interests created before the new law). The

ULA comment also makes clear that the special rule bringing a non-vested interest created under a preexisting power of appointment within the scope of the new law "applies to the exercise of all type of powers of appointment—presently exercisable general powers, general testamentary powers, and non-general powers."

The court in *Will of Charles Pratt*, 94 *Misc.*2d 1020, 405 *N.Y.S.*2d 995 (Sur.Ct.1978), adopted a similar approach, although that case did not involve application of the Uniform "wait-and-see" perpetuities period. Nevertheless, the petitioners in that case requested a determination of whether the testator's son violated the rule against perpetuities in exercising a power of appointment granted to him under his father's will. In finding that there was no violation of the rule against perpetuities, the court held that "the permissible period of the rule against perpetuities is determined by the law in effect *when the power is exercised and not by the law in effect when the power was created." Id.* (Emphasis added). The general principle expressed by the court in this matter is consistent with the statutory interpretation that is contained in the U.L.A., as adopted by New Jersey.

Consistent with the language of the statute as well as the persuasive analysis of secondary authority this court concludes that the statutory period applies to the non-vested interest that would be created pursuant to the exercise of the power and measured from the creation of the 1944 Trust.