109 N.J. Super. 363 (1970)
263 A.2d 195
BLANCHE NOBLE ROSS AND IRVIN W. ROSS, HER HUSBAND, PLAINTIFFS,
v.
BENJAMIN PONEMON, RUTH D. PONEMON, HIS WIFE; ROGER F. KING, PATRICIA F. KING, ROBERT L. HITCHNER, JOANNE HITCHNER, THEIR HEIRS, EXECUTORS, ADMINISTRATORS AND/OR ASSIGNS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 10, 1970.
*365 Mr. J. Peter Davidow for plaintiffs.
Mr. Charles Lee Harp, Jr. for defendants Benjamin Ponemon and Ruth D. Ponemon (Messrs. Archer, Greiner, Hunter & Read, attorneys.)
Mr. Keron D. Chance for defendants Roger F. King and Patricia F. King.
Mr. David L. Horuvitz for defendants Robert L. Hitchner and Joanne Hitchner.
HORN, J.S.C.
This quiet title action was brought primarily for the purpose of obtaining a judical declaration that a certain tract of land, consisting of .61 acres on which is a small house occupied by plaintiffs, is not subject to a preemptive right of acquisition on the part of defendants Hitchner. Subordinate issues raised by means of counterclaim and crossclaims involve reformation of the preemptive agreement as well as damages and indemnification.
In 1943 plaintiff Blanche Noble Ross was known as Blanche Noble, wife of Ralph Noble. She acquired title by deed to a tract of approximately 29 acres, known as the Swing Tract. This land did not include the .61 acres contiguous to the 29 acres. It did include thereon a larger house which Mrs. Noble and her husband occupied and which was approximately 150 to perhaps 250 feet away from the smaller house.
Mr. Noble was ill. As a result of negotiations, an agreement of sale was entered into between Mrs. Noble, seller, and Benjamin Ponemon, one of the defendants, as buyer. The consideration was $25,250. No formal descriptions were included in the agreement, but it stated that the tract to be acquired thereunder by Ponemon was the "Noble property (formerly Swing property)." It specifically excepted "the small house with approximately 1 1/2 acres; said exception having as its southerly boundary a line running from a linden *366 tree at the edge of Main Street, Fairton, 335 feet westerly to a point at the Fairton Gut." A land surveyor had been engaged to prepare the description for the 18 1/2-acre tract to be acquired by Ponemon.
Paragraph 10 of this agreement provided:
It is agreed by both parties that no building shall be erected on the excepted parcel within 60' of the aforementioned southerly boundary.
It is further agreed that the above mentioned buyer shall have first refusal in writing, if and when the portion retained by the seller is put up for sale by her/her heirs, executors, administrators or assigns. Said first refusal price shall be $10,000. * * *
For a clearer understanding, reference is made to Exhibit P-27. The land sold to Ponemon is designated. It included parcel A (two acres) on which the larger house is situate. Title to Parcel B (1 1/2 acres) remained in Mrs. Ross. Title to Parcel C (.61 acres) was obtained by her through the action to quiet title referred to later in this memorandum.
Closing under the agreement with Ponemon took place on June 15, 1957, at which time the sellers, as well as the buyers, were represented by counsel. Although the deed for the 18 1/2-acre tract was executed and delivered, apparently it was agreed that Ponemons' counsel, Francis Stanger, would draw the instrument to effectuate the provisions of the agreement of sale granting the preemptive right. Mr. Stanger prepared the description with difficulty from some survey that was provided to him. After it had been prepared it was forwarded to his client Ponemon for review, and probably to Mrs. Noble's then counsel Harry Adler, likewise for review. No subsequent agreement or discussion was shown to have taken place among the parties to change the terms of the agreement of sale.
However, the description as contained in the subsequently recorded instrument drawn by Mr. Stanger, and which was backdated to June 16, 1957, did not include the .61 acreage with the small house on it.
*367 Thereafter Ponemons and defendants King entered into an agreement, dated September 15, 1958, for the sale of the same land which the Ponemons had acquired. Though the agreement between them made no reference to the preemptive agreement, after the execution of this agreement and prior to the settlement which took place on October 31, 1958, Ponemons' right, title and interest in said preemptive agreement was assigned to the Kings.
In 1965 the Kings conveyed Parcel A to defendants Hitchner, and a similar agreement of the preemptive rights was likewise delivered.
In or about July 1958 Mrs. Noble brought an action to quiet the title to the .61 acres. A final judgment in her behalf was entered on October 30, 1959. It was duly recorded. None of defendants in the instant action were parties to this action.
After the sale to the Ponemons, Mrs. Ross and her then husband Ralph Noble moved into the smaller house and made certain improvements and repairs. She and her present husband now occupy that house.
In October 1957 Mrs. Noble's attorney advised a title examiner that the Nobles "would have to get their title matter straightened out forthwith for the dwelling in which they reside in the village of Fairton."
In June 1965 the Hitchners sent a letter by certified mail to Mrs. Ross, notifying her that they had acquired the King homestead and also the option which was first given to Ponemon "and now assigned by Kings to us, wherein the home that you reside in must first be submitted to us for purchase, if and whenever you desire to sell same at a price affixed therein." Plaintiffs instituted this action on January 30, 1969.
Plaintiffs seek a judicial declaration that it was never intended by the agreement of March 14, 1957 between Mrs. Ross and Mr. Ponemon that the right given to Ponemon should survive his conveyance of the land. They further contend that such right as was given never included, nor was *368 intended to include, the .61-acre tract with the small house on it, and that this intention is confirmed by the description contained in the instrument drawn by Mr. Stanger.
The two instruments must be read together, and all of the circumstances surrounding the transactions must be considered, in order to determine the intention of the parties. The agreement of March 14, 1957 provides in the printed portion, near the end of it, that it should be binding upon the respective parties as well as their heirs, executors, and administrators. It had been drawn by a layman. The instrument drawn by Mr. Stanger made it very clear that it should be binding upon the heirs, executors, administrators and assigns.
I find that it was in fact the intention of the parties that it was to be binding upon the sellers, Mr. and Mrs. Noble, and also their heirs, executors and administrators even after the disposition of the land by Ponemons.
Mrs. Ross contends that she knew shortly after she acquired the entire tract from her grantor that the .61 acreage was not actually included in that conveyance, and that she did not own it. She argues that having been aware of that fact she could never have intended to include it in the preemptive agreement. The clear wording of the March 14 agreement of sale demonstrates otherwise. The explanation that I find for the description contained in the effectuating agreement prepared by Mr. Stanger is that all concerned at that time assumed that the small house was located on the Swing tract.
Plaintiffs further assert that it could never have been her intention to sell the small tract, together with the house on it, for only $10,000, considering that she expended large sums for improvements and repairs on the small house. But I am satisfied that it was never intended that she should sell merely 1 1/2 acres of land for $10,000 when the average price per acre for the other land was, at that time, about $850.
*369 I believe that if there had been an intention to subject only Parcel B to the preemptive agreement, the surveyor at the time would have been directed to prepare a description of that tract. This would have necessitated the preparation of two descriptions and not merely that which was conveyed to Ponemon.
Mrs. Ross was a business woman. I find that Parcels B and C were intended to have been included in the preemptive agreement.
However, plaintiffs further claim that (a) the agreement is unenforceable because it constituted an unreasonable restraint upon alienation, and (b) it is void as in violation of the rule against perpetuities.
I shall first address myself to the reasonableness of the restraint. Conditions or limitations in restraint of a function or affecting the enjoyment of an estate in fee are repugnant to the nature and qualities of fee estate. They must be strictly construed. Drachenberg v. Drachenberg, 142 N.J. Eq. 127, 130 (E. & A. 1947); 73 C.J.S. Property § 13, at 195 (1951).
Similarly in Brace v. Black, 51 N.J. Super. 572 (App. Div. 1958), it was stated that for such restraints to be upheld there must be some reasonable justification that gives a court a basis for declaring that the purposes of the restraint outweighed the policy of defeating unreasonable restraints on alienation.
In Brace v. Black, supra, the court considered the validity of an agreement whereby the title holder granted a right of first refusal to purchase certain premises for $6,500. The Appellate Division held that the fixed price amounted to an unreasonable restraint upon the alienation of property. Cited was the comment, Restatement, Property, § 413, at 2444:
When, by the terms of the restraint, the price at which the estate must be offered to the designated person is fixed or is to be a certain percentage of a third party's offer, there is substantial curtailment of the alienability of the land. A fixed price is usually set *370 sufficiently low, in the light of possible developments, to enable the designated person to reap the benefits of any increase in value. The use of the percentage form assures the designated person of definite profit without need to speculate on future possibilities. In either case, the owner of the estate will be deterred from attempting to sell his property because of the improbability that he will realize the full market value. This hindrance to alienation brings these provisions within the rules previously stated in Sections 406-411.
The principles are also well stated in 6 American Law of Property, § 26.66, at 508 (1952):
The effect of a preemption as a practical impediment to alienation hinges upon this matter of price. If the preemptive right requires that the property be offered at much less than its value at the time of proposed sale, there is an obvious check upon alienation, since the owner will retain the property rather than sell it at a great sacrifice. Any preemption exercisable at a fixed price is likely to involve sacrifice to the person bound to offer it, since a fixed price is usually based upon the value of the property when the preemptive provision is executed. It might be held, therefore, that any preemption fixing a price without reference to future increase in value is void as a restraint upon alienation in substance. If the preemptioner must pay the offerer's price, however, there is no material impediment to alienation.
Each case must be thoroughly examined in the light of all the circumstances to determine whether the objective sought to be accomplished by the restraint is worth the cost of interfering with the freedom of alienation.
If this property is in fact worth in excess of $40,000 today, as testified by plaintiffs' expert, there is little likelihood of its sale. No persuasive facts have been shown to me that would justify my sustaining the validity of the agreement. See also Michalski v. Michalski, 50 N.J. Super. 454 (App. Div. 1958); Wrubel Realty Corp. v. Wrubel, 138 N.J. Eq. 466 (Ch. 1946); Krueger v. Frederick, 88 N.J. Eq. 258 (Ch. 1917). Accordingly I find the restraint to be unreasonable and thus invalid.
The agreement is also contrary to the rule against perpetuities. In 6 N.J. Practice (Clapp Wills and Administration, 3 ed.), § 622, at 149, 150 (1962), it is stated that *371 a binding option to purchase property presents special problems, for the equitable interest created by the option does not vest with the giving of the option, but remains contingent upon an uncertain event, namely, the exercise of the option. Hence it is held that an option for the purchase of land, where the option is specifically enforceable, is invalid under the rule against perpetuities if it must or may be exercised after the expiration of the period prescribed by the rule. An option which continues over such an extended period may prevent the improvement of property, or, in any event, obstruct its saleability. Cf. Westfield Trust Co. v. Beekman, 97 N.J. Eq. 140, 149 (Ch. 1925).
It has been stated that a preemption of unlimited duration requiring an offer to the preemptioner for a specified sum of money is the most objectionable type of preemption and is void by the weight of authority. 6 American Law of Property, supra, § 26.67, at 510.
If a transaction is invalid by reason of its being in conflict with the rule against perpetuities, such transaction must fall. Litcher v. Trust Co. of N.J., 11 N.J. 64 (1953); In re Lattouf's Will, 87 N.J. Super. 137 (App. Div. 1965).
Accordingly I find that the preemption agreement is void by reason of its being in conflict with the rule against perpetuities.
Plaintiffs are not barred by laches or estoppel from asserting their claims to relief in this action. There has been no inequitable prejudice to any of the parties defendant who make this claim. Regardless of what Ponemon thought concerning whether or not the small tract in question was included in the preemptive agreement, the fact remains that the agreement put on record, and which the subsequent purchasers must have seen, did not include the small tract. It seems almost inconceivable that any subsequent purchaser would have not caused a survey to be made to ascertain exactly what the description contained in the recorded instrument included. In addition to this, the Kings and *372 Hitchners successively took only the right, title and interest that Ponemon obtained with respect to the preemptive agreement. There were no warranties or representations which give rise to a valid claim for damages. I am satisfied that they each purchased and each would have purchased without reference to and without any reliance upon the acquisition of any preemptive right.
I have considered all of the other contentions of the parties. I do not find that they are of sufficient consequence to require discussion.
Accordingly a judgment will be entered declaring that plaintiffs hold title to the premises in question, free and clear of the preemptive agreement. No costs.