234 N.J. Super. 223 (1989)
560 A.2d 733
BARBARA LAIELLI MAZZEO, PLAINTIFF-APPELLANT,
v.
ANNE KARTMAN, THE ESTATE OF SAMUEL KARTMAN, AND ANSAM, INC., DEFENDANTS-RESPONDENTS, AND WILLIAM THOMAS AND IRENE THOMAS, DEFENDANTS,
v.
CHELSEA TITLE AND GUARANTY CO., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 17, 1989.
Decided June 29, 1989.
*225 Before Judges LONG, MUIR and KEEFE.
Gerard W. Quinn argued the cause for appellant (Cooper Perskie April Niedelman & Wagenheim, attorneys; Gerard W. Quinn, on the brief; Kenneth D. Wolfe, of counsel).
Jeffrey L. Gold argued the cause for respondents.
The opinion of the court was delivered by LONG, J.A.D.
Plaintiff Barbara Laielli Mazzeo here challenges an order of the trial judge dismissing her complaint with prejudice against defendants, Anne Kartman, Estate of Samuel Kartman and Ansam, Inc. The case arose in 1986 when plaintiff filed a complaint against defendants and William and Irene Thomas alleging breach of a lease purchase agreement in connection with property in Brigantine, New Jersey. Thereafter, plaintiff amended her complaint to delete her demand for specific performance and assert a claim for money damages. All defendants answered and filed cross claims against each other and third-party complaints against their title insurance companies. Plaintiff settled with the Thomases prior to trial.
At trial, the following facts were established on plaintiff's case: In May 1966, defendants Ansam, Inc., Anne Kartman and her late husband Samuel Kartman (collectively the Kartmans) *226 entered into a lease purchase agreement with plaintiff Barbara Laielli Mazzeo and her late husband Anthony Laielli (collectively the Laiellis) for the purchase of Lots 3, 4, 5 and 6 in Block 5B on the tax map of the City of Brigantine, New Jersey. The agreement provided that title to the lots would transfer on March 1, 1972. The agreement also granted the Laiellis the right of first refusal on Lots 1 and 2 in Block 5B for a fixed price. Lots 1 and 2 were empty lots which stood between Lots 3, 4, 5 and 6 and the ocean. The parties modified the 1966 agreement by an addendum in 1969 which changed only the consideration for the right of first refusal from a fixed price to the same terms as any bona fide offer. Both the 1966 agreement and the 1969 addendum were recorded.
The Laiellis accelerated the settlement date contained in the 1966 agreement and took title to Lots 3, 4, 5 and 6 on March 21, 1970. On the same day, they transferred title to the four lots to Gene and Ann Takach. The Takaches procured title insurance for the property through Chelsea Title and Guaranty Company. The search revealed the 1966 agreement between the Kartmans and Laiellis and the 1969 addendum. In connection with the transfer to the Takaches, the Laiellis were required by Chelsea to execute an affidavit of title containing several form paragraphs and the following addition:
All of the terms and conditions of the Lease Purchase Agreement between Ansam, Inc., a corporation of the State of New Jersey, and Samuel Kartman, Anne Kartman and Brigantine Island Diner, Inc., a corp. of New Jersey and the undersigned dated May 3, 1966 recorded in Book 2327 page 367 and addendum dated 10/20/69 and recorded in Book 2495 page 269 have been satisfied as agreed.
Plaintiff was not involved in the negotiations leading up to the 1966 agreement, 1969 addendum, or the 1970 closing but was present on all three occasions along with her late husband who participated in the negotiations. She testified that only Lots 3, 4, 5 and 6 were involved in the 1970 closing and that the right of first refusal on Lots 1 and 2 continued unaffected by the closing.
*227 On January 31, 1977, without notice to the Laiellis, the Kartmans entered into an agreement with the Thomases. The agreement provided for the installment sale of the Islander Motel and granted the Thomases an option to purchase adjacent Lots 1 and 2 on or before April 4, 1984. The Kartmans and the Thomases amended the 1977 agreement in May of 1981 to provide that settlement would occur within twenty days of the execution of the amendment. Notwithstanding the 1981 amendment, the Kartmans transferred title to Lots 1 and 2 to the Thomases in May 1984 for $150,000.
The Thomases procured a title report in connection with the purchase of Lots 1 and 2. The title report listed the 1966 first refusal option and the 1969 addendum in favor of the Laiellis. The Title Company of New Jersey conducted a search in February and March of 1984. According to testimony by their settlement clerk, their title commitment contained an exception  the 1966 right of first refusal given under the Laielli lease purchase agreement. In order to remove the exception, the company required an affidavit stating that the Laielli's 1966 right of first refusal had been extinguished. The 1970 Laielli affidavit of title did not satisfy their concerns. The Kartmans accordingly executed an affidavit of title which stated "the right of first refusal given to Anthony Laielli and Barbara Laielli under Lease Purchase Agreement as contained in Deed Book 2327, Page 369 has been extinguished."
Plaintiff testified that she did not have any contact with the Kartmans until March 1984, at the time Thomas exercised his option, when she received a telephone call from Samuel Kartman in which Kartman explained that he had the opportunity to sell the Islander Motel (which is adjacent to Lots 1 and 2) for a good price and requested, as a favor, that she sign a document releasing her right of first refusal on Lots 1 and 2. Kartman did not say that he was thinking of selling Lots 1 and 2, nor did he advise plaintiff of a bona fide offer on Lots 1 and 2. Plaintiff never agreed to release her right of first refusal during the conversation, nor did she sign a document to that *228 effect. Although she originally testified that she believed the right of first refusal was limitless, plaintiff later clarified her testimony to state her belief that the preemptive right lasted as long as the parties to the 1966 contract lived. She also stated that the 1970 affidavit did not involve that right. In addition, plaintiff also presented the testimony of Louis DiChiara, a longtime friend of her late husband, who stated that up until the time of his death in 1982, Laielli consistently expressed the belief that the right of first refusal on Lots 1 and 2 continued in existence. Plaintiff learned of the transfer of Lots 1 and 2 to the Thomases in 1985 when she overheard a discussion regarding the sale. Samuel Kartman died prior to the filing of the original complaint in 1986. The Thomases sold the property in 1987 for $1,375,000.
At the end of plaintiff's case, defendants moved for dismissal. The trial judge ruled that he could not rely on plaintiff's "self-contradictory" testimony; that if the agreement was "forever" it violated the rule against perpetuities, and that without a date for performance the agreement violated the statute of frauds. Accordingly, he "reasonably ... concluded that the parties terminated their relationship in all respects at the time that [Lots] 3, 4, 5 and 6 were conveyed...." Alternatively, he held that if the March 1970 sale did not extinguish the option rights they were extinguished on March 1, 1972, the 1966 agreement date for the sale of Lots 3, 4, 5 and 6. The trial judge further concluded that if that date did not control, then all rights to the option were extinguished within a reasonable time. As to what constituted a reasonable time, the judge reasoned that plaintiff had the burden of proof, and that she had presented no evidence to support the conclusion that the option existed long after 1972. The judge also determined that the Kartmans did not breach any agreement with plaintiff but if there was a breach it occurred in January 1977 when the Kartmans agreed to give the Thomases an option on Lots 1 and 2. Moreover, if a breach occurred, the judge held that plaintiff did not prove compensatory or punitive damages against the *229 Thomases or the Kartmans, because she offered no evidence as to the 1977 value of her right of first refusal. He therefore granted defendants' motion to dismiss plaintiff's complaint. Plaintiff appeals. We reverse.
In order to place this case in perspective, its procedural posture before the trial judge requires comment. At the time that the judge ruled, plaintiff had rested and defendants had moved for an involuntary dismissal under R. 4:37-2(b). Although the judge gave lip service to the rule, his assessment of plaintiff's testimony as self-contradictory belies a proper application of it. The worth, nature and extent of plaintiff's evidence was simply not in issue. See Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). The motion should have been denied if the evidence, viewed most favorably to plaintiff with all legitimate inferences therefrom, could have sustained a judgment in her favor. Id. We think it could have.
The 1966 agreement granted plaintiff a right of first refusal on Lots 1 and 2. A right of first refusal differs materially from a conventional option:
While options and the so-called `right of first refusal' are sometimes confused, there is a clear and classic distinction. The option compels performance within the time limit specified, or if none is mentioned, then within a reasonable time, whereas the right of first refusal has no binding effect unless the offeror decides to sell.
The right of first refusal, or first right to buy, is not a true option but is a valuable prerogative. It limits the right of the owner to dispose freely of his property by compelling him to offer it first to the party who has the first right to buy. Nor may the owner accept an offer made to him by a third party. [11 Williston, Contracts (3 ed. Jaeger 1968), § 1441A at 948-950; footnote omitted].
See Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 464 (App.Div. 1958), certif. granted 27 N.J. 320 (1958). A contract granting a right of first refusal may take various forms, including the type at issue here which contemplates a bona fide third party offer as the triggering event. This type of right of first refusal agreement has been described as follows:
Very often it is clearly provided that B shall have a Right of First Refusal at the same price and on the same terms as those of an offer by a third person *230 that O is willing to accept. Here, the price at which O must make an offer to B is made definite by the terms of third person's offer or by the terms on which O has expressed a willingness to sell. O is not under a duty to sell to anybody or to accept anybody's offer; and B gets no power of acceptance if O merely reports the terms of such an offer without indicating his own willingness to accept it. [1A Corbin, Contracts, § 261 at 470 (1963); footnote omitted].
By its very nature, this variation of a right of first refusal agreement cannot contain a specific date for performance because it is dependent upon the actions of a third party over whom the parties have no control. Thus, the trial judge here erred in concluding that the absence of a date for performance in this contract violated the statute of frauds (N.J.S.A. 25:1-5d). See, e.g., Guaclides v. Kruse, 67 N.J. Super. 348 (App.Div. 1961), certif. den. 36 N.J. 32 (1961); McClung Drug Co. v. City Realty & Invest. Co., 91 N.J. Eq. 216 (Ch. 1919). He also erred in holding that in the absence of a date for performance "it may reasonably be concluded that the parties terminated their relationship in all respects at the time that 3, 4, 5 and 6 were conveyed by the Kartmans to the Laiellis." It may be that the parties did terminate their relationship that way, but the absence of a date for performance in the right of first refusal agreement is no basis for that conclusion.
The trial judge was correct however in his concern over the temporal limitation on the right  in other words  how long the right of first refusal was to exist. As he properly held, a contract "forever" would have violated the rule against perpetuities. See West Caldwell v. Caldwell, 26 N.J. 9, 29-30 (1958); Ross v. Ponemon, 109 N.J. Super. 363 (Ch.Div. 1970). Thus, he was required to look to the 1966 contract and related documents in order to determine whether an outside date was provided for the duration of the right of first refusal. See Wellmore Builders, Inc. v. Wannier, supra, 49 N.J. Super. at 463; cf. Barco Urban Renewal Corp. v. Housing Auth., 674 F.2d 1001, 1009 (3rd Cir.1982); Guaclides v. Kruse, supra, 67 N.J. Super. at 353-355. Clearly, as the judge concluded, there was nothing in the 1966 contract itself delineating the temporal boundaries of the right. Likewise, as the judge correctly ruled, *231 on its face the Laiellis' 1970 affidavit did not clarify this omission. In this situation, where the parties to a contract fail to specify a term that is essential to a decision as to their relative rights and responsibilities, the trial judge will attempt to supply that term in order to effectuate the parties intent. New Jersey Bank v. Palladino, 77 N.J. 33, 46 (1978); see Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 182 (1981); Restatement, Contracts, § 204 at 96 (1981). Terms are generally implied because
the parties must have intended them and have only failed to express them ... because they are necessary to give business efficacy to the contract as written, or to give the contract the effect which the parties, as fair and reasonable men, presumably would have agreed on if, having in mind the possibility of the situation which has arisen, they contracted expressly in reference thereto. [William Berland Realty Co. v. Hahne & Co., 26 N.J. Super. 477, 487 (Ch.Div. 1953), modified, 29 N.J. Super. 316 (App.Div. 1954); citations omitted].
If the trial judge cannot determine the parties actual intent, he should determine a "reasonable time" for the expiration of the right. This is the New Jersey rule. Barco Urban Renewal Corp. v. Housing Auth., supra, 674 F.2d at 1007; see Guaclides v. Kruse, supra, 67 N.J. Super. at 354-356; cf. River Development Corp. v. Liberty Corp., 45 N.J. Super. 445, 464 (Ch.Div. 1957), aff'd 51 N.J. Super. 447 (App.Div. 1958), aff'd 29 N.J. 239 (1959) (where no time is fixed for the performance of a contract, the law implies that a reasonable time was intended). Other jurisdictions follow this rule as well. See Pearson v. Horne, 139 Ga. 453, 77 S.E. 387, 388 (1913); Brauer v. Hobbs, 151 Mich. App. 769, 391 N.W.2d 482, 485-86 (1986). What constitutes a reasonable time under New Jersey law "is usually an implication of fact, and not of law, derivable from the language used by the parties considered in the context of the subject matter and the attendant circumstances, in aid of the apparent intention." West Caldwell v. Caldwell, supra, 26 N.J. at 28.
On these issues, the trial judge went wide of the mark in concluding that plaintiff adduced no evidence to show that the *232 right lasted long after 1972. The gravamen of plaintiff's case was to supply the trial judge with evidence of what the parties intended as the temporal limitations on the right of first refusal. More particularly, she attempted to show that the parties intended the right to last for their lifetimes and that it was at least still in effect in 1984. In furtherance of this, plaintiff introduced the 1966 contract which contained no limiting language as to the right of first refusal, and also omitted any reference to the parties' heirs and assigns. Plaintiff testified that it was her belief that the preemptive right lasted for the lives of the parties to the contract. Her witness, DiChiara, testified that up until the time of his death in 1982, Mr. Laielli also believed that the preemptive right was still in existence. In addition, plaintiff related a telephone conversation with Samuel Kartman in 1984 in which he asked her to release her right of first refusal on Lots 1 and 2, inferentially indicating concurrence in her position as to the continued existence of the right. See Joseph Hilton & Assoc., Inc. v. Evans, 201 N.J. Super. 156, 171 (App.Div. 1985) ("the conduct of the parties after execution of the contract is entitled to great weight in determining its meaning"). At that point it was error for the trial judge to grant defendants' motion to dismiss. Clearly, plaintiff's evidence, with all fair inferences to which it was entitled under R. 4:37-2(b), could have sustained a judgment in her favor that the parties intended the preemptive right to last for their lifetimes or at the very least that it was still in effect in 1984. We thus reverse the order granting dismissal of plaintiff's complaint and remand the case to the trial judge for reinstatement of the complaint and for continued proceedings.
On the remand, after the presentation of defendants' case, the trial judge should carefully review the evidence with specific emphasis on the parties' objective manifestations of intent. See Leitner v. Braen, 51 N.J. Super. 31, 38 (App.Div. 1958). In this connection, Samuel Kartman's alleged conversation with *233 plaintiff in 1984 seeking the release of the right is crucial.[1] Likewise, evidence of Mr. Laielli's continued belief in the existence of the right as of 1982 is significant. Moreover, we note that the specific language used by the parties in the right of first refusal contract, which does not include the terms "heirs and assigns", has been reasonably construed in other jurisdictions as evidence that the contract was intended to reflect a personal right of the parties and to last for their lifetimes. See, e.g., Baker v. McCarthy, 122 N.H. 171, 443 A.2d 138, 140 (1982); Clark v. Shelton, 584 P.2d 875, 877 (Utah 1978); Wilson v. Whinery, 37 Wash. App. 24, 678 P.2d 354, 356 (1984); Smith v. Van Voorhis, 296 S.E.2d 851, 854 (W. Va. 1982).
The judge should also keep in mind that the facts presented here are much different than those presented in Barco and Guaclides where the preemptive right extended to the same property as that which was the subject of the main agreement. Here, the main agreement referenced property entirely distinct from that involved in the right of first refusal and, in interpreting the contract, that distinction weighs heavily against the conclusion that a tie-in should "reasonably" be implied.
Finally, insofar as damages are concerned, we think the trial judge was mistaken in concluding that if a breach occurred in this case, it took place in 1977 when defendants entered into an option agreement with the Thomases. By its nature, a first refusal agreement is breached when the offeror accepts a third-party's offer without first offering to the holder of the right of first refusal. See 1A Corbin, supra, § 261 at 473-474. The 1977 option agreement was a continuing offer by defendants to sell Lots 1 and 2 to the Thomases, which became a binding, bilateral executory contract of sale upon the Thomases' acceptance. See West Caldwell v. Caldwell, supra, 26 N.J. *234 at 26 Lakewood Tp. Mun. Util. v. S. Lakewood Water Co., 129 N.J. Super. 462, 470 (App.Div. 1974). Thus, if plaintiff's right of first refusal was still in effect, it was not until the Thomases exercised their option that defendant had an obligation under the 1969 addendum to offer Lots 1 and 2 to plaintiff "for the same consideration and upon the same terms as specified in said bona fide offer." See Wellmore Builders, Inc. v. Wannier, supra, 49 N.J. Super. at 464. The contract with plaintiff was not breached until the Thomases exercised the option without plaintiff having been given an opportunity to exercise her right of first refusal. In other words, if a breach occurred, and if plaintiff was ready, willing and able to exercise her right of first refusal at the time, then benefit of the bargain damages must be computed as of May 1984.
Reversed and remanded.
NOTES
[1] Plaintiff's evidence as to this conversation should be tested by the "clear and convincing" standard of the Dead Man's Act (N.J.S.A. 2A:81-2) at least insofar as plaintiff's claim against Samuel Kartman's estate is concerned.