250 N.J. Super. 148 (1991)
593 A.2d 814
JULIANO & SONS ENTERPRISES, INC., PLAINTIFF-APPELLANT,
v.
CHEVRON, U.S.A., INC. AND GULF OIL CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 19, 1990.
Decided July 19, 1991.
*149 Before Judges KING, R.S. COHEN and STERN.
Clifford L. Van Syoc argued the cause for plaintiff-appellant (Clifford L. Van Syoc, attorney).
Robert Mahoney argued the cause for defendant-respondent Chevron U.S.A., Inc. (Wilentz, Goldman & Spitzer, attorneys; Frank M. Ciufanni of counsel; Robert Mahoney and Lisa Adubato Nesi on the brief).
The opinion of the court was delivered by STERN, J.A.D.
We are asked to decide whether the common-law rule against perpetuities applies to nondonative commercial transfers. Our consideration of the issue is facilitated by the recent enactment in New Jersey, with some modifications, of the Uniform Statutory Rule Against Perpetuities of the National Conference of Commissioners on Uniform State Laws. See L. 1991, c. 192 enacted on July 3, 1991 (the Act). As the Uniform Act has now been adopted in this State, we view the principal issue to be the impact of the Act's exception for "[a] nonvested property interest ... arising out of a nondonative transfer", as provided in Section 4. Specifically, we must decide whether nondonative transfers excepted from the Act nevertheless remain subject to the common-law rule, and, if not, the impact of the statute's provisions regarding effective date.
*150 We hold that the Uniform Statutory Rule Against Perpetuities as adopted in New Jersey abolishes the common law and embodies the State's entire law on the rule. We further conclude that, while the statute is not retroactive and applies only to property interests "created on or after the effective date of th[e] act", Section 5, the nondonative commercial transaction for consideration executed before the Act's effective date in this case is no longer subject to the common-law rule against perpetuities. Therefore, with respect to the case before us, we reverse the trial judge's determination that the plaintiff's right of first refusal is void under the rule against perpetuities and remand for further proceedings.

I.
For purposes of reviewing the grant of summary judgment in favor of defendants, we must view the facts in the light most favorable to plaintiff.
Plaintiff is a "small family-owned company" which owns property on Route 73 in Mt. Laurel. Plaintiff operates a motor lodge hotel on that location. Defendant Gulf Oil Corporation owns an adjacent piece of property on which it operates a gasoline station. In 1974 plaintiff and Gulf entered into a series of real estate transactions. By agreement dated February 13, 1974, defendant conveyed a parcel of land to plaintiff.[1] On November 5, 1974, plaintiff and Gulf executed an agreement in which plaintiff granted Gulf a sewer and water easement across plaintiff's property in exchange for which Gulf granted plaintiff a "right of first refusal" to buy the service station property. The agreement provides that Gulf "hereby bargains, sells and grants to [plaintiff] the right of first refusal to purchase certain lands of [Gulf] which are more particularly described in Schedule A" and that:

*151 1. In the event [Gulf] shall at any time hereafter receive a bona fide offer for the purchase of the aforesaid remaining lands and premises owned by [Gulf] and on which lands and premises a Gulf service station is presently being operated, and such offer to purchase is acceptable to [Gulf], [plaintiff], its successors or assigns, shall have the option to purchase said lands and premises from [Gulf] on the same terms and conditions contained in said bona fide offer.
Both parties were represented by counsel with respect to the transactions.
In 1974, defendant Chevron U.S.A. acquired Gulf.[2] Thereafter, Chevron put several Gulf properties, including the service station involved in this case, up for bid. Cumberland Farms Inc. bid on Chevron's marketing assets in the Northeast, including the subject property, and Chevron accepted the bid.[3] On December 19, 1985, Chevron and Cumberland signed an "Asset Purchase Agreement" covering virtually all of Chevron's Northeastern assets. After learning the plaintiff would not waive its right of first refusal, Chevron and Cumberland Farms signed a letter agreement removing the subject property from the "Asset Purchase Agreement" and leasing the property for a 30-year term. The agreement further provided that "upon receipt of a written waiver" by plaintiff "of its right of first refusal to purchase the Premises" Chevron would convey the parcel to Cumberland for $100,000.
Thereafter, plaintiff commenced this suit seeking specific performance of its right of first refusal. While admitting that Gulf entered into the contract granting a right of first refusal, *152 Chevron denies that plaintiff has a right to purchase the property.

II.
There is no dispute that, despite the fact that the common-law rule against perpetuities evolved as a result of donative transfers before the development of sophisticated commercial transactions, the common law did not exclude nondonative transfers, including a "right of first refusal." See generally, e.g., Ferrero Constr. v. Dennis Rourke Corp., 311 Md. 560, 536 A.2d 1137, 1139-1141 (1985); Robroy Land Co., Inc. v. Prather, 24 Wash. App. 511, 601 P.2d 992 (1979), rev'd o.g. 95 Wash.2d 66, 622 P.2d 367 (1980); Atchison v. City of Englewood, 170 Col. 295, 463 P.2d 297 (en banc 1969). See also Mazzeo v. Kartman, 234 N.J. Super. 223, 230, 560 A.2d 733 (App.Div. 1989);[4]Ross v. Ponemon, 109 N.J. Super. 363, 263 A.2d 195 (Ch.Div. 1970); 5A Powell on Real Property, §§ 764-767B (1988). Therefore, a right of first refusal, unlimited in duration, was generally subject to the rule. See Ferrero Constr. v. Dennis Rourke Corp., supra; Atchison v. City of Englewood, supra; Robroy Land Co. Inc. v. Prather, supra; 5A Powell on Real Property, § 771[2]; L. Simes and A. Smith, The Law of Future Interests, § 1154, at 61-64 (2d ed. 1956).
In Mazzeo v. Kartman, supra, 234 N.J. Super. at 229-232, 560 A.2d 733, we held that the rule against perpetuities applies to rights of first refusal but that the plaintiff had presented enough evidence to survive defendants' motion for involuntary dismissal. Writing for the court, Judge Long concluded that the trial judge should have attempted to discover the parties' intent with respect to the duration of the right, and failing that, should have implied a "reasonable time" limit on the exercise of *153 the right before voiding it under the rule. Id. at 230-231, 560 A.2d 733.
On the remand, the trial judge distinguished Mazzeo. First, he concluded that, unlike in that case, the express language in the contract between plaintiff and Gulf indicated that there was no intent to limit the agreement's duration. Second, the judge found that Mazzeo was inapplicable because an individual, rather than a corporation, could exercise the right pursuant to the agreement, whereas corporations "have perpetual existence as opposed to individuals." Further, he found it significant that, unlike in Mazzeo, the plaintiff's "heirs and assigns" could exercise the right. The trial judge also noted that here the "whole agreement related to a grant of a perpetual easement." Moreover, the trial judge held that, unlike in Mazzeo, the parties here, each represented by counsel, clearly expressed their intent in the contract "that this agreement was to last forever." He therefore concluded that the agreement violated public policy and constituted an unlawful restraint on alienation in violation of the rule against perpetuities.
We recognize that the contract in this case, negotiated at arms length with the assistance of competent counsel, may well have contained clear manifestations of the parties' intent and provides rights and obligations for the parties' "successors and assigns." Further, the agreement provides that the right may be exercised whenever Gulf received a bona fide offer for the property "at any time hereafter." Thus, the agreement cannot be "saved" in the traditional way by construction of a "reasonable" time limit as a matter of fact or law. However, if the agreement is not subject to the rule against perpetuities, the parties' intent and expectations can be effectuated without being declared void and unenforceable as a matter of law.

III.
As noted, on July 3, 1991, the Governor signed the New Jersey version of the Uniform Statutory Rule Against Perpetuities *154 which, with some minor exceptions not relevant to this opinion, embodies the Uniform Act. In releasing it from committee on October 15, 1990, the Senate Judiciary Committee issued a statement which includes the following:
The proposed uniform act retains the common law rule that an interest is valid when it is created if it is certain to vest no later than 21 years after the death of an individual alive at the time of the creation of the interest. The uniform act would depart from common law by holding interests, not valid under the common [law] rule against perpetuities, valid provided that the interests do not remain non-vested 90 years after their creation.[5]
This approach to the law of perpetuities is known in legal circles as the "wait and see" rule. See generally Waggoner, "The Uniform Statutory Rule Against Perpetuities," 21 Real Property, Probate and Trust Journal, 569, 571-74 (Winter 1986); Cohen, "The Rule Against Accumulations and `Wait and See'," 33 Temple Law Quarterly 34 (1959).
Section 1(a)(1) of the Act provides that a nonvested property interest valid under the common-law rule remains valid under the statute by vesting within lives in being plus 21 years. See also the prefatory note to the "Uniform Statutory Rule Against Perpetuities" as drafted by the National Conference of Commissioners on Uniform State Laws and reprinted in the Handbook of the Ntl. Conf. of Commissioners on Uniform State Laws and Proceedings, 419 (1987) at 421, 426. Section 1(a)(2) of the New Jersey Act establishes the "wait and see" rule by providing that an interest would be valid so long as it does not remain unvested for more than 90 years. See also Prefatory Note, supra at 426. Section 2 provides when a nonvested property interest is created, and Section 3 directs the court, in certain *155 circumstances, to "reform a disposition in the manner that most closely approximates the transferor's manifested plan of distribution" upon the filing of a petition within the allowable 90 year period.[6]
Section 4 of our Act, like the Uniform Act, excludes certain interests and powers of appointment from the statutory rule. The exclusions and exceptions from the common-law rule are all preserved. However, in addition to the common-law exclusions, Section 4(a) of the statute, like Section 4(1) of the Uniform Act, excludes nondonative transfers from the statutory rule. According to the Uniform Commissioners, "[t]he Rule Against Perpetuities is an inappropriate instrument of social policy to use as a control on such arrangements. The period of the Rule  a life in being plus 21 years  is suitable for donative transfers only." Id. at 426. Consistent with that view, our statute in Section 4(a) provides that the Act shall not apply to "[a] nonvested property interest or a power of appointment arising out of a nondonative transfer, except a nonvested property interest or a power of appointment arising out of" eight specified circumstances not relevant here. The question, as we see it, therefore, is not whether nondonative commercial transactions are excepted from the statute, but whether that exception maintains the common law.
We hold that the new statute embodies the entire law of the State of New Jersey, as of its effective date, with respect to the rule against perpetuities. We so conclude because the Commissioner's comment to the Uniform Rules so suggests. It states that:
Since the Common-law Rule Against Perpetuities is superseded by this Act (or a statutory version or variation thereof is repealed by this Act), a nonvested property interest, power of appointment, or other arrangement excluded from the Statutory rule by this section is not subject to any rule against perpetuities, statutory or otherwise. [At 451].
*156 See also Waggoner, "The Uniform Statutory Rule Against Perpetuities," 21 Real Property, Probate and Trust, 569, 600 (Winter 1986), where the Reporter of the Uniform Act notes that Section 4 of the draft act, which would have excluded commercial transactions, was not included in the final draft because the drafting committee "was of the opinion that the control of commercial transactions that directly or indirectly restrain alienability is better left to other types of statutes...." Id.

V.
The fact that nondonative commercial transactions are excluded from the Act is not dispositive of this case if the Act itself does not affect pre-existing transfers. Section 5 of our new statute is applicable only to interests "created on or after the effective date," although courts are permitted to exercise equitable jurisdiction to reform prior transactions which are in violation of the common law. Section 5(b) provides:
With respect to a nonvested property interest, or a power of appointment, created before the effective date of this act which is determined in a judicial proceeding, commenced on or after the effective date of this act, to violate this State's rule against perpetuities as that rule existed before the effective date of this act, a court upon the petition of an interested person may reform the disposition in the manner that most closely approximates the transferor's manifested plan of distribution and is within the limits of the rule against perpetuities applicable when the nonvested property interest or power of appointment was created.
Of course, if the right of first refusal was, in fact, triggered upon either the sale of Gulf assets by Chevron or by Cumberland Farms' bid, it would have been exercised within lives in being plus 21 years following execution of the agreement and within 90 years of its execution. In any event, we conclude that while this case does not strictly fall within the language of Section 5(b), there is no justification to apply the common law to this transfer which would no longer be subject to the rule had it occurred after the statute's effective date.
*157 We have previously stated that "[w]here more recent decisions of the Supreme Court plainly undermine the authority of a prior decision although not squarely and explicitly overruling it, we are entitled to follow the current doctrine and need not be confined by the prior ruling." State v. Ciuffini, 164 N.J. Super. 145, 152, 395 A.2d 904 (App.Div. 1978). Cf. N.J. Highway Authority v. Central R. Co. of N.J., 21 N.J. 157, 165, 121 A.2d 388 (1956); see also State v. Chiarello, 69 N.J. Super. 479, 498, 174 A.2d 506 (App.Div. 1961) (Conford, S.J.A.D.), certif. den. 36 N.J. 301, 177 A.2d 343 (1962). We believe that that doctrine is also applicable when the Legislature abrogates the common-law and establishes policy inconsistent with the prior case law precedent for which there was no governing statutory policy.
Statutory changes are usually effective prospectively, particularly where existing or vested rights or interests would otherwise be affected. See N.J.S.A. 1:1-11 which provides that "[t]he repeal ... of any statute or part of any statute, shall not in any way affect, impair or invalidate any act done or right or limitation vested or accrued ... or in any way annul, invalidate, take away, impair, limit, disturb or affect any right, title, estate, privilege, immunity or power or conveyance in, to or of either real or personal property, acquired, given, conferred, had or made under or by virtue of, or validated by, any statute or part of any statute so repealed." See also N.J.S.A. 1:1-14 ("Effect of Revised Statutes and acts hereafter passed upon actions or proceedings commenced prior to effective date of such legislation"). Here, however, we are not dealing with the repeal of any prior statute or amendment of any prior statutory policy. Rather, we are concerned exclusively with abrogation of the common law. The Act is an expression that the common-law rule against perpetuities no longer exists in New Jersey and that nondonative commercial transactions are no longer subject to the rule.
Our Legislature, as the authoritative source of public policy, has now decided the types of transactions which should be *158 subject to the rule against perpetuities and which should not. Neither the Legislature nor this court can perceive any danger to titles or alienability of real properties requiring continued application of the rule to nondonative commercial transactions even where they occurred prior to the effective date of the Act.[7] In other circumstances concerning amendments to legislation involving municipal land use, the courts of this State have held that "the law in effect at the time an appellate court decides a cause generally governs the disposition thereof ...," Tidewater Oil Co. v. Mayor & Council of Carteret, 84 N.J. Super. 525, 530, 202 A.2d 865 (App.Div. 1964), aff'd 44 N.J. 338, 209 A.2d 105 (1965); see also Riggs v. Long Beach Island, 101 N.J. 515, 521-522, 503 A.2d 284 (1986); Kruvant v. Mayor & Council of Cedar Grove Tp., 82 N.J. 435, 440, 414 A.2d 9 (1980); Roselle v. Mayor and Council of Moonachie, 48 N.J. Super. 17, 21-22, 136 A.2d 773 (App.Div. 1957), reaffirmed on reh'g. 49 N.J. Super. 35, 139 A.2d 42 (App.Div. 1958); Hyland v. Mayor and Tp. Comm. of Tp. of Morris, 130 N.J. Super. 470, 327 A.2d 675 (App.Div.), aff'd 66 N.J. 31, 327 A.2d 657 (1974).
While exceptions to this rule exist such as where a property owner relies upon existing law at the time of conveyance or takes other action relating to his property in reliance upon existing law, we will otherwise "apply the statute in effect at the time of [our] decision." Kruvant v. Cedar Grove Mayor and Council, etc., supra, 82 N.J. at 440, 414 A.2d 9. As our Supreme Court has said, "[t]he purpose of the principle is to effectuate the current policy declared by the legislative body  a policy which presumably is in the public interest." Id. See also Riggs v. Long Beach Island, supra. This is such a case, particularly because Section 5 applies to transfers which would otherwise be subject to the Act and not those, like this transaction, *159 which, by virtue of Section 4, would not be subject to the Act at all.
Accordingly, we reverse the grant of summary judgment for defendant and remand for further proceedings consistent with this opinion. [Note: The Uniform Statutory Rule Against Perpetuities was codified as N.J.S.A. 46:2F-1 to -8].
NOTES
[1] Some attachments and acknowledgements to the contract and the November 5, 1974 agreement bear subsequent dates.
[2] We need not decide, for purposes of this appeal from the grant of judgment, whether the Chevron acquisition of Gulf triggered the right of first refusal. Chevron contends that the provision giving the right of first refusal violates the rule against perpetuities and the related rule against restraints on alienation. That is the basis on which summary judgment was granted.
[3] One of the issues that will have to be decided on the remand is whether the acquisition by Cumberland Farms, a corporation to which Gulf was related, triggered the right of first refusal within the meaning of the agreement. Chevron contends that even if there is a valid right of first refusal not violative of the rule against perpetuities, it was not "triggered" by Chevron's transaction with Cumberland. In light of the basis for the disposition below, this issue was not determined by the Law Division judge.
[4] We previously remanded this case, after summary judgment was initially granted, for reconsideration in light of Mazzeo v. Kartman, then recently decided.
[5] On April 25, 1991, the Governor conditionally vetoed the legislation, suggesting that the 90 year period should be limited to "no later than 21 years after the death of an individual then alive." The precise recommended change was only to Section 1(c)(1) dealing with powers of appointment. The veto did not address the period for vesting or satisfaction of a condition precedent, as embodied in Sections 1(a) and 1(b). The Legislature subsequently adopted the change as embodied in the Governor's conditional veto, but did not amend the 90 year alternative period for vesting embodied in Sections 1(a) and (b).
[6] According to the Uniform Commissioners, "the circumstances requisite to reformation under this section will rarely arise, and consequently ... this section will seldom need to be applied." Id. at 426.
[7] It can hardly be contended in a transaction like this that a transferor of real property or his or her attorney relied upon the common law to create a transfer which he or she knew to be invalid.