**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1566-22

771 ALLISON COURT LLC,

    Plaintiff-Appellant,

v.

NICHOLAS SIRIANNI and
BRETT SIRIANNI,

    Defendants-Respondents.

_____

Submitted April 15, 2024 – Decided May 17, 2024

Before Judges Gilson, Bishop-Thompson, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0800-21.

Stevens & Lee, attorneys for appellant (Bradley L. Mitchell and Christopher A. McDonald, of counsel and on the briefs).

Rogers Counsel, attorneys for respondents (Lance Scott Rogers and Brian T. Newman, of counsel and on the brief).

PER CURIAM

In this breach of contract action, plaintiff 771 Allison Court, LLC appeals from an order denying its motion for summary judgment and granting summary judgment to defendants Nicholas and Brett Sirianni, finding a right of first refusal (ROFR) restricted the sale of the property and precluded plaintiff from conveying good and marketable title.  We affirm.

I.

We derive the following facts from evidence submitted by the parties in support of, and in opposition to, the summary judgment motions, viewed them in the light most favorable to the opposing party.  See Templo Fuente De Vida Corp. v. Nat. Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  In 2010, Harvey Berk owned 771 Allison Court, a residential home in Moorestown (the Property).  On October 13, 2010, Berk executed and recorded a deed that included a ROFR to run with the land.  The provision stated in relevant part:

> It is the intention of the grantor herein to create a right of first refusal to run with the land as follows:  that any future conveyance of the aforesaid property commonly known and designated as 771 Allison Court, Moorestown, New Jersey, being also known and designated as Block 5400 Lot 35 on the Office Tax Map of the Township of Moorestown, be and is hereby subject to the following:  (a) if a decision is made to sell the aforesaid real property, either by me, or any subsequent owner[,] notice shall be given at that time as set forth herein, and thereafter, upon the execution of contact of sale the property shall be offered for

2

purchase upon the same terms and conditions to: (a) my daughter, Haley Ann Berk, if my daughter shall decline to proceed with the purchase then the property shall be offered to my son, Daniel Berk, and if Daniel Berk declines to purchase same, then the property shall be offered to the Berk & Berk Trust[,] established for the benefit of Haley and Daniel Berk[.] Said offer to sell must include a fully executed contract of sale, and the parties listed herein shall have five (5) business days after the receipt of said offer to agree to the purchase or their rights are waived.

The corrective deed expressly provided that the ROFR "shall only be extinguished by the death of his children, Haley Berk and Daniel Berk."

In 2019, an experienced licensed New Jersey realtor represented both Berk and Jeff Schneider, also an experienced licensed New Jersey realtor and luxury home builder, in the sale of the Property. Before Schneider purchased the Property, the agent told Schneider about the ROFR and of the "difficulties" in selling the Property due to the associated provision. During the attorney review period, the parties agreed to delete Section 11, Quality and Insurability of Title, in its entirety and replace it with the following language:

Buyer shall convey a title that is legally marketable and insurable at standard rates by any title company licensed to do business in the State of New Jersey. Seller shall utilize a standard Bargain and Sale Deed, Covenant v. Grantors Acts for purposes of conveying title. Seller does hereby enclose a copy of his title insurance policy, a copy of the [ROFR] Deed, and a

3

copy of the survey for the premises, which buyer acknowledges receipt of same.

Schneider informed Berk that the Property would be purchased in a cash transaction and an LLC would be formed. He ultimately purchased the Property for $760,000, and 771 Allison Court, LLC was formed with Schneider as the sole owner and managing member. Schneider then expended $1,000,000 to renovate the Property as a "new luxury home."

On February 1, 2021, plaintiff marketed and listed the Property for sale at $2,300,000. During the listing period, the ROFR was not disclosed to defendants.

On February 5, plaintiff and defendants entered a real estate contract (the Contract) to purchase the Property for the full asking price. At this time, defendants were unaware of the ROFR. Section 11 of the Contract stated:

> This sale will be subject to utility and other easements and restrictions of record, if any, and such state of facts as an accurate survey might disclose, provided such easement or restriction does not unreasonably limit the use of the Property. Generally, an easement is a right of a person other than the owner of property to use a portion of the property for a special purpose. A restriction is a recorded limitation on the manner in which a property owner may use the property. A violation of any restriction shall not be a reason for Buyer refusing to complete the Closing as long as the title company insures Buyer against loss at regular rates.

4

This section also addressed marketable title stating, "[t]itle to the Property will be free from all claims or rights of others as described in this Section and Section 12 of this Contract." The provision further stated that "[t]itle to the Property shall be good, marketable and insurable, at regular rates, by any title Insurance company licensed to do business in New Jersey, subject only to the claims and rights described in Section 12." This provision also stated: "Seller represents, in the best of Seller's knowledge, that there are no restrictions in any conveyance or plans of record that will prohibit use and/or occupancy of the Property as a single-family residential dwelling."

Section 11 made remedies available to a buyer if seller was unable to transfer the title or they were unable to agree to a reduction of the purchase price. The Contract expressly provided: "Buyer shall have the option to either void this Contract, in which those monies paid by Buyer toward the purchase price shall be returned to Buyer, together with the actual costs of the title search and the survey and the mortgage application fees in preparing for the [c]losing without further liability in Seller, or to proceed with the [c]losing without any reduction of the purchase price."

A-1566-22

On February 18, 2021. while in attorney review, the parties executed an addendum to the Contract. The ROFR, however, was not referenced or disclosed during the review period.

Plaintiff did not abide by the ROFR. Notice was not provided to Haley, Daniel, or Berk & Berk Trust of plaintiff's intention to sell the Property. Nor did plaintiff offer to sell the Property to them on the same terms and conditions as defendants.

Defendants hired a title search company to conduct a title survey and to obtain title insurance. After a title search was completed, on March 9, 2021, the title company provided a Commitment of Title Insurance (Title Commitment) that disclosed the ROFR and a missing waiver from the Berk & Berk Trust. Defendants were told the ROFR was an "impediment" for the sale of the Property and the title company was unable to provide title insurance because of the ROFR. Defendants objected to the ROFR and demanded that it be removed or eliminated before closing.

At this time, plaintiff began addressing the ROFR. In early March, plaintiff obtained an unnotarized waiver of rights to the ROFR signed by an unnamed representative of Berk & Berk Trust and "44," on behalf of Haley Ann Berk in connection with the sale of the Property between plaintiff and

A-1566-22

defendants. Daniel Berk did not sign the waiver. That waiver was provided to the title company. After plaintiff was notified that the waiver was deficient, prior to closing, plaintiff produced a notarized waiver of the ROFR rights signed by Haley Ann Berk and Daniel Berk and a Certificate of Trust but not a release of the ROFR. Defendants were not satisfied with the ROFR waiver and refused to close on the Property.

After receiving the waivers, the title company found a "single underwriter" who was "willing to entertain the idea" of an additional policy endorsement for an additional fee, "above and beyond the normal rate for title insurance." Defendants, however, did not finalize this option.

Defendants served a notice of termination on April 13, 2021, asserting a breach of contract based on plaintiff's "inability to convey marketable title free and clear from the rights of others" which "violated Section 11 of the [Contract]." Defendants subsequently purchased another property. Four months later, plaintiff sold the Property to another buyer for $1,950,000. Plaintiff disclosed the ROFR to the buyer, and the ROFR was excepted from coverage in the new buyer's title insurance documents.

Thereafter, plaintiff filed a single count complaint alleging breach of contract against defendants for defendants' failure to close on the Property on

7

March 31, 2021, and for the termination of the Contract on April 13, 2021. Defendants filed an answer, asserting affirmative defenses, and a counterclaim for breach of contract.

Following discovery, the parties filed cross-motions for summary judgment. Plaintiff argued that the Contract did not require "perfect title," defined as "'free from all encumbrances[.]'" Plaintiff acknowledged the ROFR [was] a restriction but argued that "it was not a restriction on use." Accordingly, plaintiff contended that defendants are subject to a penalty for terminating the Contract because Section 11 expressly identifies a use restriction as a basis for termination of the Contract.

In contrast, defendants asserted plaintiff failed to convey title "free from all claims or rights of other[s]" pursuant to Section 11 due to the ROFR. They further asserted that plaintiff's inability to permanently extinguish the ROFR entitled them to void the Contract. At the close of oral argument, the motion judge request supplemental briefings on the issue of whether, as a matter of law, plaintiff had an obligation to disclose the ROFR prior to entering the Contract with defendants.

In an order and well-reasoned written decision issued on January 6, 2023, the motion judge denied plaintiff's motion and granted defendants' cross-motion

for summary judgment, holding the ROFR constituted a "restriction on the alienability of the Property." The judge stated that "plaintiff's inability to eliminate the ROFR following defendant[s'] request confirmed that plaintiff was unable to deliver title to the Property 'free and clear from all claims . . . or rights of others at closing, thereby relieving defendants of the obligation to close."

The court was unpersuaded by plaintiff's argument that defendant should be "compelled to close the transaction due to the availability of title insurance coverage," although it was at a higher cost. The judge further explained that the "ROFR is a restriction on the free and unfettered alienation of the [P]roperty for which there was no exception established in the part[ies'] agreement. As such, Plaintiff failed to satisfy its obligations pursuant to the [C]ontract."

II.

On appeal, plaintiff contends the express terms of the Contract govern termination. Specifically, plaintiff argues the trial court erred in: (1) holding that title was required to be "free from all claims or rights of others"; (2) not finding the ROFR to be an exempted "restriction" under the Contract; and (3) authorizing defendants' "illegal" cancellation of the Contract despite finding the ROFR does not substantially interfere with the use of the property for residential purposes. Plaintiff also argues that the motion judge failed to address that there

9

is "no plausible argument that the $50 additional fee to insure the ROFR raised the available title insurance above 'regular rates.'"  We reject plaintiff's arguments.

We review a grant or denial of summary judgment de novo, "applying the same standard used by the trial court."  Samolyk v. Berthe, 251 N.J. 73, 78 (2022).  Based on that standard, we are required to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'"  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)).  "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  We do not defer to the trial court's legal analysis or statutory interpretation.  RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A-1566-22

We conduct a de novo review of the parties' contract guided by "familiar rules of contract interpretation." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 615 (2020) (quoting Serico v. Rothberg, 234 N.J. 168 (2018)). Thus, our starting point is the plain language of the contract. Id. at 615-16. "It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."'" In re Cnty. of Atl., 230 N.J. 237, 254 (2017) (alteration in original) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016). Simply put, courts enforce contracts as written and do not "make a better contract for either party." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999).

To prevail on a breach of contract claim, a party must prove: the parties entered a contract, containing certain terms; the party performed what was required under the contract; the other party did not fulfill its obligation under the contract; and the other party's breach caused a loss to the party. Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016) (citing Model Jury Charge (Civil),

11

4.10A, "The Contract Claim—Generally" (approved May 1998)).  As such, a party claiming a breach bears the burden of proving each element by a preponderance of the evidence.  Ibid.

A ROFR restricts the right of the seller to "dispose freely of [the] property by compelling [the seller] to offer it first to the party who has the first right to buy."  St. George's Dragons, LP v. Newport Real Est. Grp., LLC, 407 N.J. Super. 464, 482 (App. Div. 2009) (quoting Mazzeo v. Kartman, 234 N.J. Super. 223, 229 (App. Div. 1989)).  Here, the deed shows the ROFR was structured in contemplation of any future conveyance of the Property as the triggering event until the death of Berk's children.

Applying the above standards, we discern no reason to reverse the grant of summary judgment to defendants.  Before us, plaintiff repeats the same arguments presented in its motion for summary judgment.  We reject plaintiff's contention that the restriction defined in the Contract controls.  In support of its contention, plaintiff relies on an unpublished case for the proposition that a ROFR is a restriction used in real estate contracts made subject to all restrictions and easements of records, which is misplaced.

We are satisfied the motion judge correctly considered and analyzed the Contract.  Like the motion judge, we conclude that Section 11 of the Contract

required that plaintiff convey property that "would be free from of all claims of the rights of others" at the time of closing. We further conclude that the ROFR contained in the deed restricted the sale of the Property first to Haley, then to Daniel, and then to Berk & Berk Trust. The record establishes that plaintiff did not provide notice of the intention to sell the Property or notice to beneficiaries of the Contract pursuant to the ROFR. We hold that absent a release of the ROFR, plaintiff was unable to deliver good, marketable, and insurable title to the Property, which relieved defendants of the obligation to close on the Property pursuant to Section 11.

Lastly, plaintiff's contention that the fifty-dollar additional fee to insure the ROFR raised the available title insurance above "regular rates" was an implausible argument is unavailing. The additional fee does not comport with Section 11, which required plaintiff to cover insurable title at a regular rate. As noted above, even if the additional fee was not above regular market rates, plaintiff was unable to convey marketable title.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                          A-1566-22